**UNITED STATES**

v.

**Bruce JOHNSTON, Sr., et al.**

**Crim. A. Nos. 78–304, 79–8.**

United States District Court, E. D. Pennsylvania.

June 20, 1979.

Douglas B. Richardson, Asst. U. S. Atty., Philadelphia, Pa., for United States.

John Duffy, Philadelphia, Pa., for defendant Bruce Johnston, Sr.

Edward Weis, Philadelphia, Pa., for defendant David Johnston.

David Garfunkel, Philadelphia, Pa., for defendant Norman Johnston.

Thomas Gavin, West Chester, Pa., for defendant Ferd Greer.

POLLAK, District Judge.

Indictment No. 79–8 charges each of four persons—Ferd Greer, Bruce Johnston, Sr., David Johnston, and Norman Johnston— with one or more counts of (1) interstate transportation of stolen property, and (2) conspiracy. Indictment No. 78–304 charges each of the three Johnstons, who are brothers, with one or more counts of (1) interstate transportation of stolen motor vehicles, (2) obstruction of justice, and (3) con- spiracy. These two indictments are the current embodiments of earlier indictments which have been superseded or dismissed.[1]

After the initial federal indictments were returned, Pennsylvania authorities filed numerous state charges, ranging from burglary to homicide, against the Johnstons and others. The filing of the state charges triggered massive newspaper, magazine, radio and television coverage, both local and national; this publicity began late last fall, reached a crescendo during the winter months, and has recurred intermittently this spring.

It is anticipated that the state trials will begin in the late summer or early fall. The federal charges, having been initiated earlier than the state charges, were scheduled to be brought on for trial commencing June 25. On May 23, I heard argument on certain defense motions whose disposition is summarized in this memorandum. As is explained below, one result of the argument is that I have decided to postpone the federal trials until after the state trials.

**I.**

The three Johnstons moved for an indefinite continuance of the trial of both federal indictments. They contended that the publicity has been so pervasive in scope and prejudicial in content as to make a fair trial unattainable in the foreseeable future.

At the argument on May 23, I in effect took citizen notice of the intensity and the hostile nature of the publicity which has, over many months, surrounded the three Johnstons, and especially Bruce Johnston, Sr. But I was not persuaded that it would be inherently impossible to conduct fair trials in this district this summer: I felt that painstaking *voir dire* of prospective jurors —coupled, if need be, with sequestration of the juries—should suffice to insulate the federal trials from the potentially distorting impact of what has been and may hereafter be published and broadcast about one or

1. Some of the earlier indictments named additional defendants, two of whom (Leslie Dale and Ricky Mitchell) have pleaded guilty and been sentenced, and others of whom are deceased.

another of the defendant Johnston brothers. Accordingly, I stated that I would deny the motions for an indefinite continuance of the two federal trials.

## II.

The Johnstons moved, in the alternative, to continue the federal trials until after the completion of the state homicide trials.[2] Their contention, as elaborated at the argument on May 23, was twofold: (1) that the massive adverse publicity already generated poses an even greater hazard for the state trial process than for the federal trial process, since the publicity relates primarily to the state homicide charges; and (2) that several weeks of federal trials this month and next would generate so much additional prejudicial reporting and commentary as geometrically to compound the problem the state courts will confront of according the defendants due process when the state trials are held a few months from now.

Since the courts of Pennsylvania can be counted on to be as zealous as federal courts to protect the due process rights of those accused of crime, it might reasonably be thought to follow that I should not alter the federal trial calendar for the purpose of protecting the state trial process—so the more so since the publicity stimulated by the state trials may be expected to enhance the problem of insuring an impartial federal trial environment, if the federal trials are postponed until after the state trials. I would have found these considerations dispositive, and would have therefore denied the Johnstons' motion to continue the federal trials until after the state trials, if I felt that the prosecutorial interests of the two sovereigns, and the correlative due process claims of the defendants as against the two sovereigns, were of roughly equal magnitude. But that does not seem to me to be the case. The federal charges are serious ones, to be sure. But the state charges include some which are capital offenses. See 18 Pa.C.S. § 1311, 1978 Purdon's Pa.

Legis.Serv.Pamph. No. 6, at 605. Under these circumstances, I am persuaded that the federal interest in prompt disposition of federal charges must yield to the far greater federal interest in helping to insure that state charges in which life may be at stake are tried with meticulous fidelity to the mandates of due process. Cf. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

## III.

At the argument on May 23, I set June 25 as the date for hearings on two other defense motions: a motion to order three persons who may be government witnesses to undergo psychiatric examinations; and a motion to dismiss Indictment No. 78–304 on the ground that massive pre-indictment publicity may have biased the grand jury which returned it.

The three possible witnesses whom the defendants think ought to undergo psychiatric examinations are Leslie Dale, Ricky Mitchell, and Bruce Johnston, Jr. Via print and broadcast, Messrs. Dale and Mitchell have acquired substantial notoriety as alleged members of the so-called "Johnston gang."[3] Mr. Johnston, who is in the federal witness protection program, is a son of defendant Bruce Johnston, Sr.; there has been considerable press and broadcast reporting of an apparent attempt on the son's life, the instigation of which has been widely attributed to the father. The defendants base their requests for psychiatric examinations of these three potential witnesses on assertions that all are addicted to drugs, and that one is alcoholic and very seriously disturbed.

On reflection I have concluded that, since the federal trials are to be postponed until after the state trials in order to guard against the generation of additional publicity potentially prejudicial to the conduct of the state trials, the June 25 hearings ought likewise to be postponed: A hearing on the motion for psychiatric examinations might

---

**2.** Ferd Greer acquiesced in this motion.

**3.** And see footnote 1, *supra*.

involve the summoning to the witness stand of one or more of the defendants and one or more of the three persons sought to be examined. Testimony, assuming its propriety and admissibility, from any of these persons would almost certainly produce publicity of the same type, though probably not of the same duration, as the publicity which the Johnston defendants fear would emerge from trials of the federal indictments. And a hearing on allegations that press and broadcast coverage undermined the fairness of the grand jury proceedings would only exacerbate the problem.

Wherefore, the hearings scheduled for June 25 will be cancelled and consideration of the motions postponed until after the state trials.[4]

### IV.

Paragraph 2 and 3 of count 18 of Indictment No. 78–304 read as follows:

2. Defendant BRUCE JOHNSTON SR., DAVID JOHNSTON, and NORMAN JOHNSTON well knew that Edward Otter was a witness before the Federal Grand Jury and a potential witness in Courts of the United States.

3. On or about November 30, 1978, in the Eastern District of Pennsylvania, defendants BRUCE JOHNSTON, SR., DAVID JOHNSTON, and NORMAN JOHNSTON did corruptly endeavor to influence Edward Otter, a government witness, and did endeavor to injure Edward Otter in his person, and did corruptly endeavor to influence, obstruct, and impede the due administration of justice in the following manner:

That on or about November 30, 1978, in the Eastern District of Pennsylvania, defendants BRUCE JOHNSTON, SR., DAVID JOHNSTON, and NORMAN JOHNSTON met with one James Griffin, unindicted herein, instructed Griffin to journey to the home of Edward Otter to see if he was present there, and informed Griffin that if Edward Otter were home, Griffin should return, pick up the defendants, and drive them back to Edward Otter's home, at which time the defendants would enter the home and kill all within, including particularly Edward Otter.

In violation of Title 18, United States Code Section 1503.

The defendants have moved to dismiss this count. Paragraph 3 sets forth three ways in which they are alleged to have violated the obstruction statute, namely that they "[a] did corruptly endeavor to influence Edward Otter, a government witness, and [b] did endeavor to injure Edward Otter in his person, and [c] did corruptly endeavor to influence, obstruct, and impede the due administration of justice . . . ." Defendants assert that phrase [b] does not state a violation of the obstruction statute, 18 U.S.C. § 1503, and that the facts stated in paragraph 3 do not make out an attempt to "influence" as charged in phrase [a]. Defendants further argue that once phrases [a] and [b] are eliminated from the count, the charging language of the count has been sufficiently changed that the count as written may not be the charge which the grand jury intended to bring. The Government concedes that phrase [b] does not charge a crime under section 1503, and does not strenuously argue that the facts stated in the count make out an attempt to "influence" Edward Otter. The Government does argue, however, that even if phrases [a] and [b] are deleted, phrase [c] and the facts contained in the count charge an offense under the obstruction statute and the count, as modified, ought to be allowed to stand.

I agree with the defendants that the facts charged, making out an agreement to kill Edward Otter, do not make out an

---

4. Consideration of motions of Ferd Greer for severance of his trial from that of the Johnstons on Indictment No. 79–8, and those of David and Norman Johnston for severance of their trials from those of Bruce Johnston, Sr., on both indictments, made under Rule 14 of the Federal Rules of Criminal Procedure, will also be postponed. Whether common trials of these defendants will cause prejudice cognizable under Rule 14 can be better determined close to the time of trial.

attempt to "influence" the conduct of Otter. In ordinary speech, an attempt to "influence" an individual means an attempt to make him change his course of conduct, that is, the course of his voluntary actions, and not an attempt to destroy him as a voluntary actor.

I must also agree with defendants that, when two out of three of the operative phrases are eliminated from this count, it is difficult to tell whether the count, as revised, accurately reflects the charge which the grand jurors believed they were preferring against the defendants. I will therefore order count 18 of Indictment No. 78–304 dismissed.

I agree with the Government that this is a rather technical ground on which to dismiss this count. An indictment is, however, a technical document, and a defendant who timely challenges the form of an indictment is entitled to be put to trial only after a grand jury has considered, and returned, a technically correct document.