**UNITED STATES of America, Appellee,**

v.

**Haythem DAWLETT,
Defendant, Appellant.**

**No. 85–1047.**

United States Court of Appeals,
First Circuit.

Argued Feb. 3, 1986.

Decided April 2, 1986.

Thomas Lesser with whom Wendy Sibbison and Lesser, Newman, Souweine & Nasser, Northampton, Mass., were on brief, for defendant, appellant.

Gary S. Katzmann, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., and Henry L. Rigali, Asst. U.S. Atty., Boston, Mass., were on brief, for appellee.

Before BOWNES and ALDRICH, Circuit Judges, PETTINE,* Senior District Judge.

PETTINE, Senior District Judge.

On August 16, 1984, defendant Haythem Dawlett was indicted by a federal grand jury sitting in Springfield, Massachusetts. The indictment, United States District Court Cr. No. 84–266–F charged the defendant with: (1) knowingly using physical force or attempting to do so, with intent to influence the testimony of a person in an official proceeding in violation of 18 U.S.C. § 1512(a); (2) knowingly threatening to cause bodily harm or attempting to do so with intent to retaliate against a person for his attendance before the grand jury in violation of 18 U.S.C. § 1513; and (3) willfully attempting to obstruct, impede, or interfere with the due exercise of rights or the performance of duties under order of a Court of the United States in violation of 18 U.S.C. § 1509.

The jury trial began on November 26, 1984, before Judge Freedman, and at the conclusion of the government's case, the court granted the defendant's motion to dismiss Count III of the indictment, and denied the motion as to Counts I and II. The jury found the defendant guilty on Count I and not guilty on Count II. The defendant received a sentence of eight years imprisonment to be served consecutively to the sentence he was then serving.

The defendant now challenges the conviction, claiming that, in effect, he was "misindicted" by the government. Dawlett does not argue that the indictment itself was in any way defective, but rather that the government chose the wrong criminal offense to proceed under, in the sense that the facts introduced at trial did not make out a violation of the statute under which he was indicted and prosecuted; 18 U.S.C. § 1512(a)(1). We agree with the defendant and order that his conviction be vacated and the indictment be dismissed.

In the proceedings below, the government and the defendant stipulated that on March 21, 1984, the defendant was indicted by a federal grand jury. The indictment charged the defendant with offenses involving the distribution of cocaine and conspiracy. The parties also stipulated that the defendant was to appear in United States District Court on August 9th and 13th for hearings on pretrial motions, and that Richard Watson (Watson) was the government's informant in the drug case against the defendant. Watson was to testify in court against Dawlett in the scheduled trial. Finally, the parties stipulated that on August 17, 1984, the defendant pled guilty to the March 21, 1984 indictment which was returned, in part, as a result of Watson's testimony.

For purposes of this appeal, the remaining facts need only be briefly summarized. Approximately one week prior to the defendant's scheduled drug trial, the local police department became aware of a plot to murder Watson. Evidence produced at trial clearly showed that Dawlett made inquiries of and solicited two individuals to murder Watson. Dawlett told these contacts that "someone was going to testify

* Of the District of Rhode Island, sitting by designation.

against him and make him look bad in court and he needed him [the witness] to be kept quiet ... hushed up permanently." (Tr. 79–80, 85). Since the assassin Dawlett hired was a government informant, Watson was not actually harmed. After obtaining sufficient information to prove that the defendant was soliciting[1] someone to murder Watson, the government sought and obtained an indictment relating to the incident. Here Dawlett appeals his subsequent conviction based on these facts. He does not contend that he never made inquiries aimed toward procuring the witness' death, but rather that such activity does not constitute an offense under the statute used to prosecute him.

■ Count I of the indictment charges Dawlett with "INTIMIDATION OF A WITNESS (18 U.S.C. § 1512(a))," alleging that "the defendant, did knowingly use intimidation or physical force, or did threaten another person, or did attempt to do so, with intent to influence the testimony of a person in an official proceeding, namely, did attempt to cause death or serious physical harm to Richard Watson, a witness in the matter of United States vs. Haythem Dawlett, U.S. District Court, District of Massachusetts, Number 84–102–F, with intent that said Richard Watson would thereby be unable to testify on behalf of the government in said official proceeding; in violation of Title 18, United States Code, Section 1512(a)."[2] The indictment is inartfully worded in that it fails to indicate with which subsection of 18 U.S.C. § 1512(a) the defendant is being charged.[3] Despite the inarticulate nature of the indictment however, both the defendant and the government agree that on Count I the prosecutor at trial proceeded solely under 18 U.S.C. § 1512(a)(1). The record reflects this understanding between the parties.

The subsection of the statute under which Dawlett was prosecuted, § 1512(a)(1), makes it a crime to *"influence the testimony of any person in an official proceeding."* (emphasis added). The defendant argues, we believe persuasively, that one who attempts to kill a witness

---

1. Defendant devotes a significant portion of his brief to the issue of whether solicitation alone is sufficient to constitute the substantial step required for a showing of attempt under the statute, pointing to a split in the circuits on this point. In view of our disposition of this case we need not now consider this issue, nor any of the various other arguments urged by defendant as grounds for reversal. If the defendant is reindicted and retried for another offense arising out of this same fact pattern, the solicitation-attempt issue might very well become germaine.

2. 18 U.S.C. § 1512(a) reads:
§ 1512. Tampering with a witness, victim, or an informant
(a) Whoever knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
(1) influence the testimony of any person in an official proceeding;
(2) cause or induce any person to—
(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
(D) be absent from an official proceeding to which such person has been summoned by legal process; or
(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings; shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

3. That the defendant did not challenge the sufficiency of the indictment prior to a trial of the merits is a red herring and not relevant here. Indeed, there is some doubt as to whether such a challenge could have been successful since the indictment is in fact a fair statement of the alleged activities constituting an offense. Additionally, we are not at all sure that the onus should be on the accused to point out possible inadequacies with the indictment. Finally the sufficiency of an indictment can always be raised on appeal. Since the issue here is the sufficiency of the evidence presented not the sufficiency of the indictment, defendant's appeal is entirely proper.

does not intend to influence that person's testimony, but rather to eliminate it entirely. Thus, since the only evidence introduced by the government at trial was Dawlett's attempt to have Watson killed, the government introduced no evidence to support a violation of § 1512(a)(1). There is absolutely no evidence in the record that Dawlett considered doing anything to Watson besides killing him.

■ We agree that § 1512(a)(1) does not reach the type of conduct engaged in here: attempted murder. In reaching this conclusion, that facts showing an attempted murder do not support a conviction for a charge of attempting to "influence" a witness, we rely upon (1) the plain meaning of the word "influence"; (2) the relevant rules of statutory construction; (3) the legislative history of 18 U.S.C. § 1512; and (4) the interpretation of the word "influence" in the case law.

"Influence" is defined in Webster's Third New International Dictionary as:

1) to affect or alter the conduct, thought, or character of by indirect or intangible means: sway; 2) to have an effect on the condition or development of: determine partially: modify.

By contrast, killing a witness would render him physically unable rather than mentally unwilling to testify. Testimony of a witness who is killed cannot be swayed or modified—it can only be eliminated. The ordinary, common, everyday usage of the term "influence", as used by both lay-persons and legal scholars, does not include murder. Killing someone does not constitute "influencing" someone; one cannot be swayed nor one's testimony modified if one is rendered totally unavailable.

4. Defendant suggests that his conduct might well constitute an offense under § 1512(a)(2)(D), which specifically prohibits causing a person to "be absent from an official proceeding to which such person has been summoned by legal process." The government counters by pointing out that since there is no proof in the record that Watson was summoned by legal process, the defendant's activities may not fall within the scope of (1)(2)(D). The government suggests that perhaps the defendant could be convicted under 18 U.S.C.

■ The relevant rules of statutory construction also cut in the defendant's favor. Words appearing in statutes are to be given their ordinary meaning. Sutherland, *Statutory Construction*, (4th Ed.) §§ 47.-23, 47.28. As discussed above, the ordinary meaning of "influence" does not encompass murder. Moreover, had Congress intended that subparagraph 1 forbidding conduct that "influences" the testimony of a witness also include conduct which *prevents* the testimony of a witness, it would not have drafted the statute to include subsections 2(A)–2(D), various parts of which refer explicitly to causing a witness to "withhold testimony" or "be absent from an official proceeding."[4] That Congress used these other terms, which more clearly encompass causing the prevention of testimony via murder of the witness, lends further credence to the argument that the word influence was meant in its usual, limited sense. The legislative history indicates that:

while subsection (a)(1) is confined to the traditional means of tampering involving the use of force, threat, intimidation, or fraud, subsection (a)(2) covers any conduct that maliciously hinders, delays, *prevents*, or dissuades a witness or victim from fulfilling his societally desirable role with reference to attending or testifying in an official proceeding, or reporting or taking other action in relation to an offense or possible offense, if the conduct is done with intent to intimidate, harass, harm, or injure another person. (emphasis added).

S. Rep No. 532, 97th Cong's 2d Sess. 17 (1982) *reprinted in* U.S.Code Cong. & Ad. News 2515, 2523.[5]

§ 1512(a)(2)(A). We do not here consider which, if any, of these subsections might subject the defendant to prosecution.

5. The government admits that the legislative history of section 1512 gives no specific content to the notion of "influence", but points to the following passage from the Senate report for support:

The first prohibited purpose uses the term "influence". This is the broadest word used in 18 U.S.C. 1503, and the Committee intends

Additionally, it is significant that Congress deleted a proposed omnibus provision from § 1512, which would have definitively and broadly covered all forms of witness tampering. Instead, Congress chose only to prohibit the specific conduct narrowly described in the final version of the statute. *United States v. Lester*, 749 F.2d 1288, 1297–95 (9th Cir.1984). Section 1512(a) reaches only certain specifically enumerated types of witness tampering; other types of conduct, no matter how morally reprehensible, are not prohibited by the statute.

The issue presented in this case is apparently one of first impression. Exhaustive research has unearthed only one case which purports to construe the scope of the term "influence." In *United States v. Johnston*, 472 F.Supp. 1102 (E.D.P.A.1979), a case arising under 18 U.S.C. § 1503, the court held that the facts charged—making out an agreement to kill a government witness—did not make out an attempt to "influence" the witness. "In ordinary speech an attempt to 'influence' an individual means an attempt to make him change his course of conduct, that is, the course of his voluntary actor." *Id.* at 1106.

The government focuses primarily on three arguments to support its claim that the verdict should stand: 1) section 1512(a)(1) "influence" encompasses attempted murder of a witness; 2) the indictment was adequate and any challenge to it should have been presented prior to appeal; and 3) defendant's objection here is untimely and he has failed to show any resulting prejudice. The government's first and second lines of attack have been addressed and disposed of above. The third contention merits some discussion.

■ At the close of the evidence, defendant made a "Motion for Judgment of Ac-

quittal on all counts of th[e] indictment on the grounds that the evidence presented [was] insufficient to satisfy a conviction of the offenses charged." Apparently, the defendant based his entitlement to acquittal on the government's failure to show acts amounting to "attempt" under the law and did not explicitly raise or address the issue of whether murder constitutes influence. While it surely would have been preferable for defendant's counsel to specifically draw the court's attention to the issue raised for the first time here, failure to do so is not fatal. In the first place, the defendant did move for an acquittal based on "insufficiency of the evidence," the ultimate grounds on which acquittal is granted here. More importantly, however, there is a well-recognized, frequently employed, exception to the doctrine that if no motion for judgment of acquittal was made in trial court, an appellate court cannot review the sufficiency of the evidence. It is universally accepted that a court may review the evidence and reverse if the error is egregious enough. Courts frequently review the evidence presented at trial in these instances even though they may not be obligated to do so. *See generally*, Wright, *Federal Practice and Procedure*, Crim.2d Vol. 2. § 469 and cases cited therein. Under Rule 52(b), the appellate court is permitted to notice "plain errors or defects affecting substantial rights." "It is the imperative duty of a court to see that all the elements of [a] crime are proved, or at least that testimony is offered which justifies a jury finding those elements." *Clyatt v. United States*, 197 U.S. 207, 222, 25 S.Ct. 429, 433, 49 L.Ed. 726 (1905). In this instance the insufficiency of the evidence mandates reversal since plain error has been committed in an area so vital to the defendant. Surely our concept of justice is violated when a

that it also receive an expansion [sic] interpretation in this section. The fact that the section requires that force, threat, intimidation, or deception be employed suffices to narrow the offense to clearly culpable conduct.
S.Rep. at 16, *reprinted in* 1982 U.S.Code Cong. and Ad.News at 2522. In view of the construction that has been given to the term "influence" as used in § 1503 (see discussion immediately

below), we find that this portion of the senate report does little to bolster the government's position. It seems that what Congress had in mind when it sought an expansive reading of the term was to cover as many types of subtle or inventive influence as possible. There is no indication provided that Congress sought to expand the meaning of the term beyond its ordinary definition.

man is convicted of a crime he did not commit. Such is the case here. Even if the issue was not properly raised and preserved at trial, the government was not prejudiced by the lack of notice; no facts that the prosecution could offer would have justified a conviction under § 1512(a)(1). While presumably the government might have been able to proceed under § 1512(a)(2)(A) or (a)(2)(D) [6] it chose to proceed under § 1512(a)(1) and must now accept the consequences of that decision.

In light of our construction of the term "influence" as used in 18 U.S.C. § 1512(a)(1), the defendant's conviction cannot stand. We do not seek to be purists in our interpretation and application of the law, however, it is a fundamental concept of our legal system that a man cannot be convicted unless every element of the crime charged is proven beyond a reasonable doubt. Regardless of what regrettable consequences may occur [7] and despite the overwhelming evidence presented by the government that Dawlett actively sought the murder of another individual, in order to preserve our system of justice the conviction must be reversed and the indictment dismissed.

---

6. Much attention was paid, in the briefs and at oral argument, to the possible existence of a lacuna in the statute, that is that perhaps § 1512 was inadvertently inartfully worded by Congress and that thus such clearly offensive and egregious conduct as existed here could go unpunished. Once again, we decline to consider which, if any, other statutes or subsections of this statute might provide a legitimate means for punishing Dawlett. If indeed a lacuna does exist in the statute, the responsibility for suturing the orifice belongs with the legislature and not with the court. *Busic v. United States,* 446 U.S. 398, 405, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980). "If there is such a lacuna in the legislative scheme, the proper remedy is not for the courts to distort the plain language of § 1512 but for Congress to enact legislation to close the gap." *United States v. King,* 762 F.2d 232, 238 (2nd Cir.1985).

7. We are not unaware that the government may be unable to punish Dawlett for his heinous activity. In addition to the issue of which, if any obstruction of justice statutes and subsections apply, there may be additional concerns involving double jeopardy and statutes of limitations. While this is a regrettable position for the government to be placed in, it is in part caused by its own doing and we are powerless to change it.