**In re UNITED STATES of America, Petitioner.**

**Docket 87–3018.**

United States Court of Appeals, Second Circuit.

Submitted May 26, 1987.

Decided Dec. 1, 1987.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y., Douglas E. Grover and Laura A. Ward, Sp. Attys., Organized Crime Strike Force, Brooklyn, N.Y., and John F. De Pue, Dept. of Justice, Washington, D.C., for petitioner.

Jay Goldberg, Atty. Pro Forma, New York City (Judd Burstein, New York City, of counsel), for respondent.

Before VAN GRAAFEILAND, MESKILL and CARDAMONE, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

The Government petitioned for a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651, directing that Chief Judge Weinstein of the United States District Court for the Eastern District of New York vacate a discovery order entered in a multidefendant racketeering case. The order, professedly made pursuant to Fed.R. Crim.P. 16, Fed.R.Evid. 801, and the court's "inherent power to require appropriate discovery", required the Government to produce all oral statements made by the defendants and coconspirators that the Government planned to offer at trial as admissions of a defendant so long as "at some point", the statements had been "memorialized in one form or another."[1] The only statements excepted from this sweeping command were those of coconspirators who were prospective witnesses or those which were not made during the course of and in furtherance of the conspiracy. *United States v. Gallo*, 654 F.Supp. 463, 469, 480–81 (E.D.N.Y.1987).

When the petition came on to be heard, trial was imminent. Because we concluded that the district court misinterpreted the Rules, prior decisions of this Court, and the nature and extent of its inherent authority,

we granted the writ by order with a statement that this opinion would follow.

Rule 16(a)(1)(A) provides in part that the "substance" of any oral statement made in response to interrogation by a known government agent which the government intends to offer in evidence must be disclosed upon request. However, statements made in response to interrogation by known government agents are not at issue in this case, 654 F.Supp. at 468; neither are tapes of a defendant's statements obtained by wiretap, the admissibility of which long has been established, *see United States v. Crisona*, 416 F.2d 107, 114–15 (2d Cir. 1969), *cert. denied*, 397 U.S. 961, 90 S.Ct. 993, 25 L.Ed.2d 253 (1970). What is at issue are oral statements made by defendants or coconspirators to persons other than known government agents which have been memorialized at some point in one form or another. We believe that, as to both defendants and coconspirators, the holding of the district court was precluded by prior decisions of this Court.

## DEFENDANTS' STATEMENTS

The Advisory Committee which drafted Rule 16 to provide for the discovery of "any relevant written or recorded statements made by the defendant ... within the possession, custody or control of the government", decided not to define the word "statements". It left development of a definition to the courts on a case-by-case basis. 62 F.R.D. 271, 310. In *United States v. Viserto*, 596 F.2d 531, 538 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979), the late Judge Gurfein, writing for this Court, held that written notes of an undercover police officer who overheard oral statements of a defendant were not discoverable. Judge Gurfein said, "because the statement was memorialized originally only in the recollection of a witness, it is not discoverable." *Id.*

The court below rejected *Viserto* as binding precedent, stating that Judge Gurfein

---

1. We use the word "memorialize" because it was used below. According to *Webster's Third New International Dictionary,* "memorialize" means "to address or petition by a memorial", to "com-

memorate". We would prefer a term such as "document", which means "to evidence by documents." *Id.*

"gave little attention to the problem", that Judge Gurfein's quoted statement was an "aside", and that "it is difficult to discern precisely how *Viserto* interprets Rule 16(a)(1)(A), even if the discussion there is not treated as dicta." 654 F.Supp. at 470. We do not have that difficulty.

When Judge Gurfein was sitting in district court, he wrote at some length on the same subject in *United States v. Dorfman*, 53 F.R.D. 477 (S.D.N.Y.1971) (judgment of conviction affirmed, 470 F.2d 246 (2d Cir. 1972), *cert. dismissed*, 411 U.S. 923, 93 S.Ct. 1561, 36 L.Ed.2d 317 (1973)). There, the oral statements were made by the defendant to a coconspirator. Judge Gurfein wrote in part:

No exception from the § 3500 requirements has been made in Rule 16 for oral statements of a defendant to a prospective Government witness who later makes a written statement.[1]

*Id.* at 479 (footnote in original).

The reference to *Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed. 2d 1287 (1959), in Judge Gurfein's footnote is particularly illuminating:

As Mr. Justice Frankfurter said in Palermo v. United States, 360 U.S. 343, 349, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287 (1959): "The suggestion that the detailed statutory procedures restrict only the production of the type of statement described in subsection (e) [of 18 U.S.C. § 3500] leaving all other statements, e.g. non-verbatim, non-contemporaneous records of oral statements to be produced under pre-existing rules of procedure as if the statute had not been passed at all, flouts the whole history and purpose of the enactment." The failure of the amended Rule 16(a) in 1966 to provide for discovery of such "non-verbatim, non-contemporaneous records of oral statements" after the pronouncement of the Supreme Court makes it almost conclusive that no such exception was intended either in trial procedure (the concern in *Palermo* ) or in pretrial discovery procedure.

53 F.R.D. at 479 n. 1.

In *United States v. Feinberg*, 502 F.2d 1180 (7th Cir.1974), *cert. denied*, 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975), which was cited with approval in *United States v. Viserto, supra,* 596 F.2d at 538, Judge Gurfein's holding in *United States v. Dorfman* was cited in turn by the Seventh Circuit, 502 F.2d at 1182. Unlike the court below, we have no problem in tracing Judge Gurfein's reasoning in *Dorfman* to the Seventh Circuit's holding in *Feinberg* and back to Judge Gurfein's holding in *Viserto.*

Other district court judges appear to have understood the message of *Viserto* and *Dorfman. E.g., United States v. Nakashian*, 635 F.Supp. 761, 772 (S.D.N.Y. 1986), *rev'd on other grounds*, 820 F.2d 549 (2d Cir.1987); *United States v. Nelson*, 606 F.Supp. 1378, 1389–90 (S.D.N.Y.1985); *United States v. Pastor*, 419 F.Supp. 1318, 1321–23 (S.D.N.Y.1975). So also have Courts of Appeals in other circuits. *E.g., United States v. Hoffman*, 794 F.2d 1429, 1432 n. 4 (9th Cir.1986); *United States v. McClure*, 734 F.2d 484, 493 (10th Cir.1984); *United States v. Carter*, 621 F.2d 238, 240 (6th Cir.), *cert. denied*, 449 U.S. 858, 101 S.Ct. 158, 66 L.Ed.2d 73 (1980). Moreover, the message of *Viserto* has been delivered in other decisions of this Court which Judge Weinstein also has sought unsuccessfully to overturn. *United States v. Fatico*, 603 F.2d 1053, 1058 (2d Cir.1979), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980); *United States v. Sebastian*, 497 F.2d 1267 (2d Cir.1974).

█ If we read correctly the district court's eloquent as usual opinion, it holds that, if at any time prior to trial a government agent memorializes in one form or another a defendant's oral statement made perhaps several years before, the oral statement would come within "the 'written or recorded statements' clause of Rule 16(a)(1)(A)." 654 F.Supp. at 471. Carrying this illogical argument one step further, the district court's holding would apply, even though the statement was reported to the government agent several years before the agent "memorialized" it, by a third party who assertedly had heard it several

years before he said anything about it to the agent. *Id.* The possibility of error which could be exploited at trial is readily apparent. In *Viserto,* we wisely decided that this was not what Congress intended.

## COCONSPIRATORS' STATEMENTS

■ The proper administration of our judicial system requires that a district court accept an appellate court's rejection of a theory of law which the lower court has announced. *See Ithaca College v. NLRB,* 623 F.2d 224, 228–29 (2d Cir.), *cert. denied,* 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *Powell v. United States,* 338 F.2d 556, 557 (7th Cir.1964). This has not happened in the instant case.

In *United States v. Percevault,* 61 F.R. D. 338 (E.D.N.Y.1973), Judge Weinstein, relying on the supposed interplay between Rule 16(a) and Fed.R.Evid. 801(d)(2)(E), held that the government must disclose statements of coconspirators which the government intends to offer in evidence as admissions of the defendant. *Id.* at 339–40. On appeal from that decision, Chief Judge Kaufman, writing for this Court, stated that Judge Weinstein "reached this result by a resourceful process of reasoning, whose apparent logical consistency evaporates under closer analysis." *United States v. Percevault,* 490 F.2d 126, 130 (2d Cir.1974). Recognizing that the district judge was in effect ordering the discovery of "statements-within-statements", this Court held that the statements ordered disclosed were in fact made by "someone other than the defendant" and were not permitted by the Jencks Act. *Id.* at 131.

Not so, says Judge Weinstein; a statement "does not become the statement of a prospective witness, solely because that witness reports the defendant's statement and attributes it to him." 654 F.Supp. at 475. We disagree. *States v. Carter, supra,* 621 F.2d at 240; *United States v.*

*Pollack,* 534 F.2d 964, 975–76 (D.C.Cir.), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976); *United States v. Callahan,* 534 F.2d 763, 765 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed. 2d 94 (1976); *United States v. Walk,* 533 F.2d 417, 420 (9th Cir.1975); *United States v. Kenny,* 462 F.2d 1205, 1212 (3d Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 233, 234, 34 L.Ed.2d 176 (1972); *United States v. Wilkerson,* 456 F.2d 57, 61 (6th Cir.), *cert. denied,* 408 U.S. 926, 92 S.Ct. 2507, 33 L.Ed.2d 337 (1972). We concluded our decision in *Percevault* with the statement that the district court's order "was grounded on a statutory and rule interpretation we find untenable. Accordingly, we reverse." 490 F.2d at 132.

In *United States v. Covello,* 410 F.2d 536, 543 (2d Cir.), *cert. denied,* 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969), we held that the Jencks Act provides the exclusive procedure for discovering statements that government witnesses have given to law enforcement agencies. A coconspirator who testifies on behalf of the government is a witness under the Act. *United States v. Roberts,* 811 F.2d 257 (4th Cir. 1987) (en banc) (per curiam); *United States v. Metropolitan Enterprises, Inc.,* 728 F.2d 444, 451 (10th Cir.1984); *United States v. Crouthers,* 669 F.2d 635, 641 (10th Cir.1982); *United States v. Collins,* 652 F.2d 735, 738 (8th Cir.1981), *cert. denied,* 455 U.S. 906, 102 S.Ct. 1251, 71 L.Ed. 2d 444 (1982). The district court impliedly recognized this when it held that disclosure would not be required of statements by coconspirators who are prospective witnesses. 654 F.Supp. at 480. This was a limited concession at best, however, because in many cases it will be the undercover agent or informer rather than the coconspirator who is the prospective witness.[2]

Under the district court's holding, allowing a defendant to discover the statement

---

**2.** We are not concerned here with a demand for disclosure under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Accordingly, if the Government did not intend to call anyone to testify concerning coconspirators' statements, they were not discoverable at all. "Disclosures are required by

the Jencks Act only for impeachment purposes." *United States v. Polizzi,* 500 F.2d 856, 893 (9th Cir.1974) (citing *Palermo v. United States,* 360 U.S. 343, 345, 79 S.Ct. 1217, 1221, 3 L.Ed.2d 1287 (1959)), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975).

of a coconspirator as his own would transmogrify the coconspirator into the person of the defendant himself. What this exercise in legal legerdemain overlooks is that a defendant who fears further disclosure by a coconspirator could take whatever unlawful steps are necessary to insure that his alter ego is silenced. *See United States v. Roberts, supra,* 811 F.2d at 259.

One reason for the congressional concern which led to the enactment of the Jencks Act can be discerned in a brief excerpt from *United States v. Carter, supra,* 621 F.2d at 239:

> Prior to trial, as part of an informal policy in the district, appellant's counsel was permitted to inspect the case file of the U.S. Attorney. Mrs. Johnson's statement was not in the file. After the inspection by defense counsel and before trial, the eyewitness, Freddie Griffen, was murdered.

*See also United States v. Dawlett,* 787 F.2d 771, 772–73 (1st Cir.1986). This congressional concern, "insuring that witnesses in organized crime cases are produced alive and unintimidated before grand juries and at trial", also led to the enactment of federal witness protection legislation. *See* Report of Senate Judiciary Committee, No. 98–225, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3545. The Committee there endorsed the following statement made during congressional consideration of the Organized Crime Control Act of 1970:

> Each step in the evidence gathering process * * * moves toward the production of live testimony, testimony that is necessary to bring criminal sanctions into play in the fight against organized crime. Criminal sanctions, in short, do not enforce themselves. Obtaining testimony, however, is only part of the problem. The Attorney General testified in 1965 that even after cases had been developed, it was necessary to forego prosecution hundreds of times because key witnesses would not testify for fear of being murdered. Tampering with witnesses is one of organized crime's most effective counter weapons. Indeed, the Attorney General indicated that such fear was not unjustified; he testified

that the Department, in its organized crime program, lost more than 25 informants between 1961 and 1965.

*Id.*

For all the foregoing reasons, we hold that, as to the district court's order for the production of statements of government witnesses, the Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act. *Palermo v. United States, supra,* 360 U.S. at 351, 79 S.Ct. at 1224; *United States v. Benz,* 740 F.2d 903, 915 (11th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985); *United States v. Algie,* 667 F.2d 569, 571 (6th Cir.1982); *United States v. Spagnuolo,* 515 F.2d 818, 821 (9th Cir.1975).

The writ of mandamus was properly granted. *See In re: Claus von Bulow,* 828 F.2d 94 (2d Cir.1987).