### UNITED STATES of America

v.

### Clarence HEATLEY, et al., Defendants.

### No. S11 96 Cr. 515(SS).

United States District Court,
S.D. New York.

Feb. 13, 1998.

See also, 994 F.Supp. 475; 994 F.Supp. 477.

Irving Cohen, New York City, Carl J. Herman, Livingston, NJ, for Defendant John Cuff.

Hurwitz Stampur & Roth, New York City, William J. Stampur, for Defendant Leroy Echols.

Golub & Golub, New York City, Mitchell A. Golub, for Defendant Raymond Jackson.

Lisa Scolari, New York City, for Defendant Yvonne Miller.

David Cooper, New York City, for Defendant John Porter.

Frank Handelman, New York City, for Defendant Paul Weller.

Mary Jo White, U.S. Atty., Southern District of New York, New York City, Andrew S. Dember, Sharon L. McCarthy, Asst. U.S. Attys., Gregg N. Sofer, Special Asst. U.S. Atty., for U.S.

## MEMORANDUM OPINION AND ORDER

SOTOMAYOR, District Judge.

This Opinion and Order addresses the pretrial motions of defendants John Cuff, Leroy Echols, Raymond Jackson, John Porter, Yvonne Miller and Paul Weller.[1]

John Cuff moves this Court for 1) a bill of particulars, 2) disclosure of all witness statements, 3) disclosure and preservation of all witness memoranda; 4) disclosure of the identity of informants; 4) a hearing regarding a statement allegedly made by the defendant to an inmate informant; 5) disclosure of a list of trial witnesses; 6) disclosure of co-conspirator acts and statements and a hearing to determine the admissibility of such evidence; 7) a hearing to determine the admissibility and audibility of taped telephone conversations between the defendant and defendant Heatley while both were incarcerated; 8) suppression of the evidence obtained as a result of a search warrant of defendant's non-legal mail while incarcerated, and 9) suppression of physical evidence seized from an

1. The substance of this Opinion was delivered to the parties in open court on November 13, 1997. *The disposition of the various motions is not changed herein.*

automobile on February 1, 1993. Cuff's motion to suppress evidence obtained from his mail will be addressed in a separate opinion.

Defendant Leroy Echols moves for 1) a bill of particulars, 2) disclosure of Rule 404(b) evidence and a hearing thereupon, 3) disclosure of the identity of informants and cooperators and an opportunity to interview witnesses before trial.

Defendant Raymond Jackson moves for 1) a severance of his trial from his co-defendants; 2) a bill of particulars and additional evidentiary disclosures, 3) a list of all contemplated Rule 404(b) evidence, including a full description of the witnesses and their testimony concerning such evidence, and 4) the striking of his alleged aliases as used in the Indictment.

Defendant Yvonne Miller moves 1) to suppress a statement made at the time of her arrest, 2) to sever her trial from her co-defendants, 3) disclosure of Rule 404(b) evidence thirty days before trial, 4) disclosure of impeachment evidence and a hearing on the admissibility of any such evidence, 5) disclosure of *Brady* and *Giglio* materials, 5) disclosure of inconsistent *Kyle* witness statements, and 6) disclosure of the identity of witnesses, informants and cooperating co-defendants. The motion to suppress Miller's post-arrest statement will be addressed by way of a separate opinion.

Defendant John Porter moves to suppress statements he made to law enforcement officials before his arrest. This motion will be addressed by way of a separate opinion.

Defendant Paul Weller moves for 1) a bill of particulars, 2) disclosure of government informants, and 3) disclosure of agreements between the Government and informants.

With the three exceptions noted above, the Court rules upon the outstanding motions in the following manner.

### Suppression of Seized Evidence (Cuff)

In the Government's Memorandum of Law in Opposition to the Defendant's Pre–Trial Motions (hereinafter the "Gov. Mem.") at 55, the Government stipulated that it would not be using the evidence seized from the automobile on February 1, 1993, in its direct case.

Accordingly, the Court denies the defendant's motion for a hearing because the defendant's motion has been rendered moot by the government's stipulation.

### Disclosure of Confidential Informant Identity (Cuff)

At a conference held on November 10, 1997, the Court ruled that defendant Cuff had proffered insufficient grounds to entitle him to a hearing on whether his statements to a fellow inmate had violated his Sixth Amendment rights to counsel. The Government has presented the court with an affirmation of Assistant United States Attorney Mylan L. Denerstein in which the Government represents to the Court that at the time Cuff made his statements, the informant had been arrested and was under indictment for violating the narcotics laws. (Gov.Mem. Ex. 1). The informant, prior to his contact with Cuff, had attended three proffer sessions with AUSA Denerstein and during those sessions neither the informant nor the government spoke about defendant Cuff. Only after the informant's offer of cooperation was rejected and the defendant had pled to a standard plea agreement, without cooperation, did the informant approach the government about potentially incriminating statements made by defendant Cuff to him.

In an Order dated October 31, 1997, the Court asked defendant Cuff to advise the Court of what factual and legal questions still existed entitling the defendant to a hearing in light of the standards set forth in *United States v. Birbal*, 113 F.3d 342, 345 (2d Cir. 1997). The defendant responded by letter dated November 6, 1997, conceding that *Birbal* made clear that a defendant's Sixth Amendment rights are not violated when an inmate acts in an "entrepreneurial way" to seek, obtain, and offer information useful to the Government. *See id.* at 346. Rather, the informant must be soliciting information at the direction of the government. *See id.* ("an informant becomes a government agent ... only when the informant has been instructed by the police to get information about the particular defendant."); *id.* ("there is no constitutional violation in the absence of solicitation").

Nevertheless, the defendant maintains he is entitled to a hearing because AUSA Denerstein could not affirm that a government agent, not herself, encouraged or solicited the inmate's work in securing Cuff's alleged statement. The Court disagrees with the defendant's contention that he is entitled to a hearing merely upon the basis of his speculation that a government agent might have encouraged the inmate to solicit information from defendant Cuff. From the circumstances described in AUSA Denerstein's affirmation, there is no reasonable basis for such an inference to be made. The informant was working with an AUSA who was not involved in the instant indictment in any way and the informant proffered the information well after he had plead guilty without a cooperation agreement. At best, the defendant's speculation suggests avenues of inquiry he might make of the informant if the informant's identity was disclosed.

As noted by the Court at the November 10, 1997 conference, however, the Court will not disclose the identity of an informant based upon sheer speculation, particularly when the Court has found, on prior occasions and now, that witnesses and informants are in danger in this case. The instant indictment charges the defendants with violating the substantive and conspiracy provisions of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d). Many of the defendants, including Cuff, are charged with engaging in a continuing criminal enterprise in which they are alleged to have counseled, commanded, induced, participated in and caused the intentional killing of over ten individuals. Some of the individuals were killed allegedly because they were suspected of being witnesses against the activities of the enterprise. Moreover, this Court has had supervision of this case since its inception and has received numerous reports of threats made against co-defendants and their families. In addition, Cuff is alleged to have threatened to have a law enforcement agent killed as a result of that agent's participation in the investigation of this case. In short, the Court has found and continues to find that disclosing the names of witnesses, informants and cooperating co-defendants creates a substantial risk of serious danger to the security of such individuals. Accordingly, the Court's decision on this motion, as well as all of the pending motions, is informed by this background.

Nevertheless, understanding that a defendant's Sixth Amendment rights are fundamental and an interview of the inmate informant is the only manner in which counsel might secure sufficient information to entitle him to a hearing, the Court agreed as an exercise of its discretion to hold an in camera interview by defense counsel of the informant. During the interview, the informant's identity was screened and defense counsel was not permitted to elicit any information which might identify the informant.

At this hearing, held on December 1, 1997, defendant's counsel was unable to elicit any testimony from the informant that tended show that the informant was directed by any government agent to procure information from any inmate, much less solicitation specifically addressed at Cuff. Absent evidence of solicitation by the government, any information obtained from Cuff as a result of the informant's own enterprise is admissible under *Birbal*. The Court therefore denies Cuff's motion to suppress his statement to the informant.

### Severance Motions (Jackson, Miller)

■ By Order dated January 13, 1997, the Court denied the motions of defendants Denise Dawson and Adrienne Bundy, pursuant to Rule 14 of the Federal Rules of Criminal Procedure, to sever their trial from that of their co-defendants but granted the defendants leave to renew their motion before trial. *See United States v. Heatley*, No. S2 96 Cr. 515, 1997 U.S. Dist. Lexis 209, 1997 WL 12961 (S.D.N.Y. Jan. 13, 1997). The Court reasoned then that because the decision to sever a case is so fact-intensive, it was premature to decide the severance question until the Court knew more about how many defendants would remain, after pleas, to be tried together and other issues, like the number of capital vs. non-capital-eligible defendants, were clarified. The Court pointed out in its decision that neither the quantum of proof against the defendants nor the differ-

ence in the nature of the crimes charged provided sufficient reason standing alone or in combination to warrant a severance:

> Broken down to its essence, defendants argue that the violent nature of the multiple crimes charged against their co-defendants, with the concomitant length of time it will take to prove those crimes at trial, sufficiently prejudice them to warrant a separate trial. Yet, as the ... Second Circuit has repeatedly recognized, "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials."

*Heatley*, 1997 WL 12961, 1997 U.S. Dist. Lexis 209, at*8, 1997 WL 12961, at *3 (quoting *United States v. Scarpa*, 913 F.2d 993, 1015 (2d Cir.1990)).

■ Similarly, although the joinder of violent with nonviolent crimes may be a factor for a court to consider in granting a motion to sever, *see United States v. Cardascia*, 951 F.2d 474, 483 (2d Cir.1991) ("relief by severance may be more appropriate when the unrelated evidence reflects activities of a violent nature"), there is no inherent prejudicial spillover in such circumstances, particularly where the court instructs a jury to consider the evidence against each defendant, on each count, separately. *See, e .g.,Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993) ("less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice"); *United States v. DeVillio*, 983 F.2d 1185, 1192–93 (2d Cir.1993) (trial judge's "explicit limiting instruction to the jurors that [the] testimony [concerning an attempted murder by other codefendants] could not be used as evidence against either [defendant]" was sufficient to protect against potential prejudice of trying defendants together).

Defendants Jackson and Miller have added nothing substantive at this time to the arguments raised by defendants Dawson and Bundy in their motion, arguments which were fully discussed and rejected by this Court in its January 13, 1997 Opinion and Order. Once again, the Court denies the defendants' motion for severance at this time, but grants leave for them to refile the motion once the issue of how many defendants and for what crimes is actually settled.[2]

### Bills of Particulars (Cuff, Echols, Jackson, Weller)

■ Rule 7(f) permits a Court to direct the filing of a bill of particulars in order to "identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time." Fed.R.Crim.P. 7(f).

■ Obtaining evidentiary detail is not the purpose of a bill of particulars. *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) ("A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."). The indictment in this case amply and adequately informs the defendants of the specific charges against them. Each racketeering act specifically names the co-defendants allegedly involved in the alleged act and the time, place and intended victim of each act. This information, in combination with the extensive discovery the Government represents it has given to the defendants, is more than sufficient to avoid surprise at trial and double jeopardy. Ac-

---

**2.** On November 13, 1997, when the substance of this Order was communicated to the parties in court, there were two significant outstanding issues with respect to the number and type of charges against the defendants, which have only been partially resolved. First, the government had represented to the Court that a superseding indictment with additional charges was expected shortly. On December 17, 1997, a superseding indictment was in fact forthcoming. Second, the number of defendants against whom the death penalty would be sought was still uncertain. The United States informed the Court on November 20 and December 17, 1997, that the Attorney General had approved seeking the death penalty against defendants Clarence Heatley and John Cuff, respectively. However the United States Attorney is currently considering whether to ask for approval from the Attorney General to seek the death penalty against defendant Raymond Jackson, who was charged with capital crimes in the latest superseding indictment. The Court continues to believe that these issues, in addition to the possibility of further pleas, make final decision on severance inappropriate at this time.

cordingly, the Court denies the defendants' requests for a bill of particulars.

### Disclosure of Informants, Cooperators and Witnesses (Echols, Jackson, Miller, Weller)

■ For the reasons discussed above, the Court has made a specific finding in this case that the disclosure of the identities of informants, cooperators and witnesses places these individuals in substantial and immediate risk in this case. No defendant has made a particularized showing that either the disclosure of any such identity, or a pre-trial interview with any such individual, is "essential" or "material" to his or her individual defense as that concept has been set forth in *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957) ("Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the [informant's] privilege must give way") and more fully explained in *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir.1988) (informant's testimony must be shown to be "material to [the] defense"). Accordingly, the Court denies the defendants' requests for the disclosure of informants, cooperators or witnesses before trial and denies the defendants' requests to interview such witnesses.

The Court, however, reserves decision on whether the Government should disclose the identities of informants or cooperators it chooses not to call as witnesses at trial. It is the judgment of this Court that until a week before trial, the Government cannot fairly discern which witnesses it will or will not use, and until that point the Court will not order disclosure of anyone's name. Therefore, a week before the trial, the Government must disclose, *ex parte*, to the Court the identities of such informants and cooperators, with a summary of their area of knowledge and the Government's explanation as to why those informants and cooperators would not be called at trial. The Government is also directed to have any such informants or cooperators ready and available for an interview with the Court or defense counsel if the Court should determine a need to disclose the identity of these individuals to counsel at

that time. The Court will also want any § 3500 material, construed to mean any direct statement by the witness or any notes about witness disclosures, disclosed to the Court for its *ex parte* review at that time. Given the probable length of jury selection in this case, the Court believes that this disclosure schedule will provide defendants with ample time for investigation of these informants and cooperators.

### Disclosure of Witness List (Cuff)

■ Because of the Court's express finding concerning the risk to the witnesses in this case posed specifically by defendant Cuff, the Court finds that the immediate disclosure of a witness list as permitted by 18 U.S.C. § 3432 is not warranted. The Court reserves decision of Cuff's motion under § 3432 until three days before trial at which time the Government is permitted to continue to demonstrate, by sufficient and particularized evidence to meet the preponderance standard set forth in § 3432, that disclosure would continue to "jeopardize the life or safety of any person." 18 U.S.C. § 3432.

### Surplusage in the Indictment (Jackson)

■ After reviewing the Indictment and various statements by multiple defendants in this action, the Court concludes that the use of aliases in the Indictment is necessary and not unduly inflammatory or prejudicial. *See United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir.1990)("Motions to strike surplusage from an indictment will be granted only where the challenged allegations are 'not relevant to the crime charged and are inflammatory and prejudicial.'"). Almost all of the co-defendants in this action were known to each other by nicknames. Nothing about the use of nicknames is necessarily prejudicial, and the inclusion of the nicknames in the Indictment will assist in obviating potential jury confusion about a defendant's alleged involvement in a multi-count, multi-defendant case. *See United States v. Elson*, 968 F.Supp. 900, 909 (S.D.N.Y.1997) ("[A]liases and nicknames should not be stricken from an Indictment when evidence regarding those aliases or nicknames will be presented to the jury at trial"); *United States v. Ianniello*, 621 F.Supp. 1455, 1479 (S.D.N.Y.1985)

(use of street names and aliases in an indictment "may well serve to obviate jury confusion."), aff'd, 808 F.2d 184 (2d Cir.1986). The nicknames at issue here, "Jerry Woo" and "Little Cuz," are themselves not prejudicial and inflammatory. Under the totality of these circumstances, the Court denies defendant Jackson's motion to strike these names from the Indictment or their use at trial.

### Disclosure of Co–Conspirator Statements and the Demand for a Hearing Thereupon (Cuff)

■ The Second Circuit has expressly held that "Rule 16 simply does not encompass [co-conspirator] statements, nor does the Jencks Act permit their disclosure over the objection of the government." *United States v. Percevault,* 490 F.2d 126, 131 (2d Cir.1974); *see also In Re United States,* 834 F.2d 283, 287 (2d Cir.1987)(memorialized statements of coconspirators about statements made by defendant not discoverable). Rule 16 permits discovery only of a defendant's statement, not those of others. *See Percevault,* 490 F.2d at 130–31. Accordingly, the Court denies Cuff's motion for disclosure of co-conspirator statements.

■ Cuff also moves for a prehearing on the admissibility of those statements. Although *Bourjaily v. United States,* 483 U.S. 171, 175–76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) requires a court to determine, by a preponderance of the evidence, whether the statements of a co-conspirator are admissible under Fed.R.Evid. 801(d)(2)(E)—a determination dependent upon the court's finding that a conspiracy existed, the defendant was a part of it, and the statements made were in furtherance of the conspiracy—neither *Bourjaily* nor any other court precedent requires or recommends the use of pre-trial hearing (sometimes referred to as a "*James* hearing," *see United States v. James,* 576 F.2d 1121 (5th Cir.1978)) to make this determination. In fact, the Second Circuit has expressly approved the practice of admitting such statements at trial subject to the government's introduction of evidence which will support the required finding under *Bourjaily. See United States v. Tracy,* 12 F.3d 1186, 1199–1200 (2d Cir.1993); *United States*

*v. Henry,* 861 F.Supp. 1190, 1196–97 (S.D.N.Y.1994). The Court will make this determination during trial and accordingly denies defendant Cuff's motion for a hearing on this issue. The Court, however, reminds the Government of its representation in its Memorandum in Opposition that it will seek from the Court an advance ruling on any potentially doubtful evidence under the *Bourjaily* standard which it might seek to introduce at trial.

### Suppression of Taped Prison Calls (Cuff)

■ Defendant Cuff moves to suppress taped telephone calls he had with co-defendant Heatley and others while the defendants were incarcerated at the Metropolitan Correctional Facility ("MCC"). I find, however, that the defendants indisputably consented to the recordings at issue.

■ The express or implied consent of one participant in a conversation is sufficient to satisfy the requirements of both the Fourth Amendment and Title III of the Omnibus Crime Control and Safe Street Acts, 18 U.S.C. § 2510 *et seq. See* 18 U.S.C. § .2511(2)(c); *United States v. White,* 401 U.S. 745, 748–54, 91 S.Ct. 1122, 1124–27, 28 L.Ed.2d 453 (1971) (Fourth Amendment does not bar the use of a conversation whose interception is consented to by another party); *United States v. Workman,* 80 F.3d 688, 692 (2d Cir.1996) (Title III allows for recording without court order where one party expressly or impliedly consents); *United States v. Barone,* 913 F.2d 46, 49 (2d Cir. 1990) (where one party to conversation consents to recording, no need under Fourth Amendment or Title III to inform other parties or for court order).

■ The Second Circuit has also made clear that inmates are deemed to have impliedly consented to monitoring of their telephone calls where they receive notice of the surveillance and nevertheless use the telephone. *See Workman,* 80 F.3d at 693; *United States v. Willoughby,* 860 F.2d 15, 19–20 (2d Cir.1988).

In its Memorandum in Opposition, the Government attached an affirmation by Dominique Raia, a Department of Justice Staff

Attorney at the Bureau of Prisons ("BOP"), affirming that the MCC, pursuant to promulgated BOP regulations at 28 C.F.R. § 540.102, has authorized wardens to monitor and intercept all inmate conversations. (Gov't Mem. Ex. 2). Prisoners, like defendants Cuff and Heatley, are advised of this policy in a notice form they sign upon admission to the facility, acknowledging that they know and understand the prison's monitoring and recording rules. The Government provided acknowledgment forms which were signed by defendants Cuff and Heatley. Those forms explicitly state that the inmate is aware and understands that the "[BOP] reserves the authority to monitor (this includes recording) conversations on any telephone located within its institutions . . . ." (Gov't Mem. Ex. 4).

The BOP policy is repeated in the Inmate Handbook given to each inmate upon his admission into the BOP system. *See* MCC Inmate Handbook, at 5 (Gov't Mem. Ex. 3) ("Telephones are on each unit for your use and are subject to be monitored."). Finally, Ms. Raia explains in her affirmation that near each telephone in the BOP housing units, a notice is printed advising inmates that "All conversations on this telephone are subject to monitoring. Your use of this telephone constitutes consent to this monitoring. You must contact your unit team to request an unmonitored attorney call." (Gov't Mem. Ex. 2).

Defendant Cuff has not denied any of Ms. Raia's evidentiary allegations. Despite the opportunity to submit a reply memorandum, none was proffered to this Court. Accordingly, defendant Cuff has not created a material issue in dispute requiring a hearing. Under the undisputed facts, defendant Cuff acknowledged that he understood his calls were both being monitored and recorded. With this acknowledgment form, he gave his consent to the tape recording of his conversations, and the Court therefore denies his motion to suppress this evidence.

### Disclosure of 404(b) Evidence (Echols, Jackson, Miller)

Fed.R.Evid. 404(b) requires that the government "provide reasonable notice in advance of trial . . . of the general nature of any . . . . evidence it intends to introduce at trial" of other or similar crimes, wrongs or acts, which a defendant has committed. The Court understands that the evidence which the Government wishes to offer at trial "may well change as the proof and possible defenses crystallize" (Gov't Mem. at 49) as trial approaches and even as a trial unveils. However, adequate advance notice to the defendants and the Court of the use of such evidence is necessary for a defendant to prepare for trial, prevent unfair surprise, and for the Court to rule upon the admissibility of such evidence. Although the Government offers to make such disclosures within 'ten days of trial, the Court determines this to be an inadequate notice time. The Court requires the Government to make such disclosure, with a full and particularized explanation of the grounds for admissibility of such evidence, within three weeks of trial, and the defendants are to move for exclusion of any such evidence within two weeks of trial. The Government can respond to the defendants' motion within five calendar days thereafter. The Court will schedule a pre-trial conference to address these issues just before trial.

The Court understands that the Government may apply to be excused from providing such information before trial upon a showing of good cause under Rule 404(b). The Court expects a particularized proffer of good faith by the Government, however, at the three week ·disclosure period specified herein. Moreover, the Court expects that during further trial preparation and the trial itself new disclosures may become necessary. The Court will evaluate those late further disclosures under the good cause standard set forth in Rule 404(b). For all of these reasons, the Court denies in part and grants in part the motions of Raymond Jackson, Leroy Echols and Yvonne Miller to compel the Government's immediate disclosure under Rule 404(b)

### Disclosure of Impeachment Evidence (Miller)

Defendant Miller provides no authority for the proposition that she is entitled to disclosure, before trial, of impeachment evidence the government possesses. The rules she cites—Fed. R. Evid. 403, 608, and 609—contain no such command. The Court

agrees with the Government that the defendant is not entitled to any such evidence until after she testifies. The Court, however, conditions its denial of the defendant's motion upon the Government's representation that it will seek a ruling from the Court on the admissibility of any impeachment evidence prior to its cross-examination of the defendant, if she chooses to testify.

### Disclosure of Brady, Giglio, Kyle and Jencks Act materials (Cuff, Miller, Weller)

A defendant has no constitutional right to receive *Brady, Giglio, Kyles,* or Jencks Act materials before trial. *See United States ex rel. Lucas v. Regan,* 503 F.2d 1, 3 n. 1 (2d Cir.1974); *United States v. Nova–Nunez,* No. 96 Cr. 0599, 1997 WL 30965, at *3–4, 1997 U.S. Dist. Lexis 662, at *9–10 (S.D.N.Y. Jan. 24, 1997). Exculpatory materials, however, must be disclosed in sufficient time to permit a defendant to make effective use of them at trial. *See Grant v. Alldredge,* 498 F.2d 376, 382 & 383 n. 7 (2d Cir.1974); *United States v. Chen De Yian,* No. 94 Cr. 719, 1995 U.S. Dist. Lexis 8560, at *11, 1995 WL 368445, at *4 (S.D.N.Y. June 21, 1995). The Government represents to the Court that it has already provided defendant Miller with *Brady* materials and that it will disclose such materials to all defendants as it is found. The Government intends, however, to provide *Giglio* and *Kyles* materials at the same time witness statements are provided as § 3500 materials. The Court cautions the Government, however, that sufficient time must be built into such disclosures to permit counsel to adequately investigate and prepare for trial. Accordingly, as the trial date approaches, the Court, government and counsel will confer as to an orderly time frame of disclosure of materials that will not compromise the safety of witnesses but ensures that counsel are not overwhelmed with materials during trial and are given adequate time and opportunity to identify and investigate inconsistencies among the statements of witnesses. On these grounds and subject to the limitations set forth herein, the defendant Miller's motion for immediate production of *Brady, Giglio,* Jencks Act and *Kyles* materials is denied.

### Production and Preservation of Agent Notes (Cuff)

The Government has agreed to preserve original notes and memoranda if they exist. The Court assumes by this agreement that the government will instruct agents not to destroy any such notes if they are created henceforth. Upon this representation of the Government, the Court denies defendant Cuff's request for an order to preserve such notes as mooted by the Government's agreement. The Court denies defendant Cuff's motion for immediate production of those notes on the same grounds the court has denied defendant Miller's requests for immediate production of *Brady, Giglio,* Jencks and *Kyle* materials.

### CONCLUSION

For the reasons discussed, the motions of defendants Cuff, Echols, Jackson, Miller, Porter, and Weller are denied in part and granted in part. For those issues reserved by the Court herein, the Court will either issue separate orders or render decisions on the record after the pertinent hearings, some of which are still on-going, are completed. **SO ORDERED.**