**Darwin Jay ROBINSON, Sr., Appellant,**

v.

**Harold W. CLARKE, Warden, Nebraska State Penitentiary, Appellee.**

No. 90–2816.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1991.

Decided July 19, 1991.

---

Thom K. Cope, Lincoln, Neb., for appellant.

Mark D. Starr, Lincoln, Neb., for appellee.

Before LAY, Chief Judge, HEANEY and BRIGHT, Senior Circuit Judges.

PER CURIAM.

Darwin Jay Robinson, Sr., appeals the denial of his second habeas petition. He argues that the trial court (1) admitted illegally seized evidence, (2) admitted tainted identification evidence, (3) admitted improper testimony from an informant, and (4) subjected him to double jeopardy. We affirm.

BACKGROUND

On the morning of January 31, 1981, an Omaha Kwik Shop was robbed at knife point. As the robber was leaving the store, he passed by a store clerk, Michael Klaumann, coming to work. Marvin Pfeifer, the clerk on duty, told Klaumann about the robbery and Klaumann got in his car and followed the only car on the street. The driver was a black male wearing a blue coat. Klaumann got the license number and followed the car to an apartment building. He then came back to the store and reported this information to the police, who towed the car.

Someone identifying herself as Shirley Robinson called the police and reported a stolen or towed car from the apartment building. The police investigated and found a photograph of Darwin Robinson in the caller's apartment. They asked the caller if they could take the photograph and she consented. One of the officers took the photograph back to the store and showed it to Klaumann. He identified the man in the photograph as the robber. Meanwhile, the caller told the police that the real Shirley Robinson was hiding in the bedroom and that she was a neighbor, Edna Lyncook. Lyncook told the police that Darwin Robinson, the man in the photograph, was in her apartment upstairs. The police arrested Robinson and took him to the Kwik Shop for Klaumann to confirm

his identification. Klaumann identified Robinson as the robber. The real Shirley Robinson, Darwin Robinson's wife, consented to a search of her apartment and the police found a blue jacket.

While Robinson was in jail awaiting trial, a state patrol informant, Robert Koppock, was also in jail after being arrested for assault and receiving stolen property. Koppock testified at trial that Robinson told him about robbing the store. The trial court allowed Koppock to testify after conducting a hearing. The court found that the admissions were voluntarily made to a private citizen at the time.

A motion to suppress the evidence obtained in the search and the identification testimony of the store clerks was denied. Klaumann and Pfeifer both identified Robinson as the robber at trial. The trial court declared a mistrial after the jury was unable to reach a verdict. Robinson was convicted of armed robbery and using a knife in the commission of a felony at a second trial. Robinson was sentenced, as a habitual criminal, to fifteen to forty-five years and ten years consecutively in the penitentiary. On appeal to the Nebraska Supreme Court, his attorney filed a motion to withdraw which was granted. The court also affirmed his conviction and sentence. *State v. Robinson*, 218 Neb. 156, 352 N.W.2d 879 (1984). Robinson's petition for habeas corpus was denied by the district court but was granted by this court. *Robinson v. Black*, 812 F.2d 1084 (8th Cir. 1987), *cert. denied*, 488 U.S. 985, 109 S.Ct. 541, 102 L.Ed.2d 571 (1988). We found Robinson had been denied effective assistance of counsel because his counsel improperly withdrew. We ordered Robinson be set free or granted a new direct appeal. After granting a new direct appeal, the Nebraska Supreme Court reaffirmed Robinson's conviction and sentence. *State v. Robinson*, 233 Neb. 729, 448 N.W.2d 386 (1989). Robinson's second habeas petition was denied by the district court. *Robinson v. Clarke*, No. CV90–L–08 (D.Neb. Oct. 5, 1990).

## DISCUSSION

### I. Search and Seizure

■ Robinson argues that the jacket and photograph seized at his apartment should have been excluded because they were products of an illegal search. Robinson asserts that the issue is reviewable by us because the Nebraska Supreme Court improperly interpreted federal cases on the issue.

The search and seizure of the photograph and jacket is not subject to review because Robinson had a full and fair opportunity to litigate the issue. *Stone v. Powell*, 428 U.S. 465, 482, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976). "The *Stone* bar applies despite a state court's error in deciding the merits of a defendant's fourth amendment claim." *Lenza v. Wyrick*, 665 F.2d 804, 808 (8th Cir.1981).

### II. Identification Evidence

Robinson also argues that the police used impermissibly suggestive identification techniques on the store clerk. He contends that using one photograph of Robinson and then parading him in front of the witness created a substantial likelihood of misidentification and violated his right to due process.

■ Under *United States v. Henderson*, 719 F.2d 934 (8th Cir.1983), we must first determine whether the out-of-court procedure was impermissibly suggestive. *Id.* at 936. If so, we then consider whether, under the totality of the circumstances, the suggestive identification created a " 'substantial likelihood of irreparable misidentification.' " *Id.* (quoting *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977)).

> This test reflects the fact that not all impermissibly suggestive [confrontations] give rise to a very substantial likelihood of irreparable misidentification. Those identifications which are reliable—where the witness's perception of the suspect unaided by the suggestive [confrontation] provided sufficient foundation for the identification—are admissible.

*United States v. Lewin,* 900 F.2d 145, 149 (8th Cir.1990) (quoting *Henderson,* 719 F.2d at 936 (citations omitted)). The reliability of the witness's identification can be determined by examining the witness' opportunity to view the criminal at the time of the crime, the accuracy of the description, the degree of attention, the level of certainty, and the time between the crime and the confrontation. *Henderson,* 719 F.2d at 936–37 (citing *Manson,* 432 U.S. at 114, 97 S.Ct. at 2253). These factors are weighed against the corrupting effect of the suggestive procedures. *Id.* at 937.

■ In this case, Klaumann only saw the robber briefly as they passed each other at the door but Klaumann remembered him as someone who had previously driven off without paying for gas. Klaumann identified the robber from a single photograph a few hours after the crime and then at the show up at the store. Although we have previously noted "that showing only a single suspect to the witness is 'the most suggestive and, therefore, the most objectionable method of pretrial identification,' " *United States v. Dailey,* 524 F.2d 911, 914 (8th Cir.1975) (quoting *United States v. Cook,* 464 F.2d 251, 253 (8th Cir.), *cert. denied,* 409 U.S. 1011, 93 S.Ct. 457, 34 L.Ed.2d 305 (1972)), we must still review the overall circumstances of the out-of-court identification. Although the police identification procedures used in this case might have been impermissibly suggestive, under the totality of the circumstances, we are persuaded the out-of-court identifications by Klaumann were reliable. In addition, Pfeifer also identified Robinson as the robber in court and he was not subject to the same show up techniques as Klaumann. Pfeifer also had a better opportunity to view the robber at the time of the crime.

## III. Informant's Testimony

■ Robinson argues that the court erred in allowing the informant to testify. He contends that his confession was involuntary because he did not know Koppock was an informant. Robinson argues Koppock received a weekly salary from the state patrol to report anything he found out. Robinson also did not have his counsel present when he talked with Koppock. He contends that the right to counsel had attached and he was denied that right when agents of the state deliberately elicited incriminating statements in the absence of his lawyer. He argues that Koppock was not acting as a private citizen because Koppock was still on salary with the state patrol.

[A] defendant does not make out a violation of [a sixth amendment] right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks.

*Kuhlmann v. Wilson,* 477 U.S. 436, 459, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364 (1986). "Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985).

In this case, Robinson's admissions to Koppock were obtained legitimately and did not violate Robinson's sixth amendment rights. The state patrol had not requested that Koppock attempt to elicit information while in jail. Although Koppock was still on salary with the state patrol, he was in jail for activities unrelated to his informant role and he received no other compensation for the information regarding Robinson. Koppock was not operating at the direction of the state patrol and it did not know about the information Koppock elicited until after Koppock was released. *See United States v. Watson,* 894 F.2d 1345, 1347–48 (D.C.Cir.1990) (finding informant working for government was entrepreneur while in jail on unrelated charge and his testimony did not violate defendant's sixth amendment right to counsel because he did not act on government's instruction); *United States v. Hicks,* 798 F.2d 446, 448–49 (11th Cir.1986) (finding informant's testimony did

not violate defendant's sixth amendment rights because although informant was working for government at time she was in jail on unrelated charge she was not deliberately planted or instructed to get information), *cert. denied,* 479 U.S. 1035, 107 S.Ct. 886, 93 L.Ed.2d 839 (1987); *see also United States v. Surridge,* 687 F.2d 250, 255 (8th Cir.) (finding potential informants do not have to be barred from visiting prisoners and an offer to assist police does not violate sixth amendment if police are not directing, controlling, or involved in the questioning), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 465, 74 L.Ed.2d 614 (1982). Koppock's information was obtained purely by happenstance. *See Kuhlmann,* 477 U.S. at 459, 106 S.Ct. at 2630. The state did not know that Koppock would deliberately use his position as a fellow inmate to get incriminating information from Robinson when counsel was not present. *See United States v. Henry,* 447 U.S. 264, 270–71, 100 S.Ct. 2183, 2186–87, 65 L.Ed.2d 115 (1980). Because the state did not intentionally create a situation likely to induce Robinson to make incriminating statements without the assistance of counsel, it did not violate his sixth amendment right to counsel. *Id.* at 274, 100 S.Ct. at 2188.

IV. Double Jeopardy

■ Robinson argues he was subjected to double jeopardy when the trial court submitted dismissed charges to the jury. He asserts that the court dismissed the charge of attempting to commit a felony with the use of a weapon because the state had failed to prove a prima facie case, but then allowed the jury to convict him on that count. He argues that once a charge is dismissed all proceedings against him on that charge terminated.

During the trial, Robinson made a motion to dismiss on the record. The court and Robinson's counsel had the following exchange:

THE COURT: This would be a good time to make your motions.

MR. GRIGGS: Yes, your Honor. Comes now the defendant, by and through his attorney, Ivory Griggs, and moves the Court to—for a dismissal of the complaint of robbery for the reason that the State has failed to prove a prima facie case.

THE COURT: I think I am going to sustain part of that as to Count II.[1]

J.App. at 98. Robinson renewed his motions at the close of his case and the court stated, "same ruling." Mem. op. at 12. The journal entry concerning the motion to dismiss, however, clearly states that the trial court denied the motion. *Id.*

In this case, the trial court's oral statement regarding the motion was equivocal. The court never made a decision regarding the motion that was clearly communicated to both sides until the journal entry indicating it denied the motion. " 'A trial court's oral or memorandum opinion is no more than an expression of its informal opinion at the time it is rendered. It has no final or binding effect unless formally incorporated into the findings, conclusions, and judgment.' " *State v. Collins,* 112 Wash.2d 303, 306, 771 P.2d 350, 352 (1989) (quoting *State v. Mallory,* 69 Wash.2d 532, 533–34, 419 P.2d 324, 325–26 (1966)). *But see State v. Carney,* 220 Neb. 906, 374 N.W.2d 59, 63 (1985) (finding double jeopardy prevented further prosecution after trial judge clearly sustained motions to dismiss and acquit but then allowed the state to present additional evidence. The court held that a judicial dismissal based on insufficient evidence constituted a finding as a matter of law and entitled the defendant to a judgment). The trial court apparently changed its mind regarding the ruling before it made the journal entry. There was sufficient evidence regarding the use of a weapon to allow the charge to go to the jury. Pfeifer had testified that he saw and felt the knife at his back during the robbery.

1. Count II was the charge of attempting to commit a felony with the use of a weapon. No weapon was ever produced as evidence.

**578**

CONCLUSION

We affirm the district court's denial of Robinson's petition for habeas corpus.