Given New York's "settled rule," we conclude that Marine Midland's judgment lien attached to Scarpino's Monroe County property simultaneously with his acquisition of the property. Accordingly, the lien is not avoidable pursuant to § 522(f).

## CONCLUSION

We have considered all of Scarpino's arguments in favor of affirmance and have found them to be without merit. The judgment of the district court is reversed, and the order of the bankruptcy court avoiding the lien is vacated.

**UNITED STATES of America, Appellee,**

v.

**Premnath BIRBAL; John T. Wright, Defendants–Appellants.**

**Nos. 856, 1204, Dockets 96–1433, 96–1434.**

United States Court of Appeals, Second Circuit.

Argued March 10, 1997.

Decided May 13, 1997.

Elizabeth D. Mann, Rutland, VT (Tepper Dardeck & Mann), for Defendant–Appellant Premnath Birbal.

Gary G. Shattuck, Assistant United States Attorney, Rutland, VT (Charles R. Tetzlaff, United States Attorney for the District of Vermont), for Appellee.

Before JACOBS, LEVAL, and CABRANES, Circuit Judges.

JACOBS, Circuit Judge:

Following a jury trial in the United States District Court for the District of Vermont (Sessions, *J.*), Premnath Birbal was convicted of a variety of drug offenses, as well as the destruction of evidence to prevent its seizure. Birbal appeals from his conviction and sentence on numerous grounds, all but one of which are addressed in a summary order issued simultaneously with this opinion.[1] Birbal's remaining claim is that the district court erroneously failed to suppress a series of damaging admissions made by Birbal in the presence of a jailmate, Edward Gabaree. When Gabaree encountered Birbal, Gabaree had pleaded guilty to drug and weapons offenses, had entered into a cooperation agreement with the government, and the day before had been sentenced. Because Gabaree had a cooperation agreement with the government, and because Gabaree *later* received a sentence reduction for his cooperation, Birbal argues that Gabaree was an agent of the government, and that the admission of that testimony into evidence violated Birbal's constitutional rights to remain silent and to assistance of counsel.

---

**1.** The summary order also decides the appeal of Birbal's co-defendant, John T. Wright. *See Unit-* *ed States v. Birbal,* Nos. 96–1433, 96–1434, 1997 WL 249946 (May 13, 1997).

## BACKGROUND

We summarize only the facts that bear upon the single issue addressed in this opinion.

*Procedural Background.* In June of 1992, Premnath Birbal was arrested for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and for destruction of evidence subject to a search warrant—by flushing cocaine down the toilet as police closed in—in violation of 18 U.S.C. § 2232. Birbal was convicted of both counts (the "cocaine offenses").

In December 1992, while Birbal awaited sentencing on the cocaine offenses, he and John T. Wright were indicted for supplying heroin to Peter Buckley, who died of an overdose of their merchandise on July 20, 1991. The grand jury also indicted both Birbal and Wright for conspiring to traffic in drugs during the two years prior to Buckley's death (collectively, the "heroin offenses"). Following a jury trial, Wright and Birbal were convicted of the heroin offenses in November 1993 (also in the District Court for the District of Vermont (Billings, *J.*)).

Birbal and Wright appealed all of these convictions for both the cocaine and heroin offenses. In August 1995, this Court vacated the convictions on the ground that the reasonable doubt instruction was flawed, and remanded to the district court for new trials. *See United States v. Birbal,* 62 F.3d 456 (2d Cir.1995) (heroin convictions); *United States v. Birbal,* No. 93–1446, — F.3d — (2nd Cir., September 13, 1995) (cocaine convictions). Following remand, all of the charges were consolidated and formed the basis for a single superseding indictment. After a two week jury trial before Judge Sessions, both defendants were convicted on all but one of the counts.[2]

*Birbal Encounters Gabaree.* On September 18, 1992—before his initial trial for the cocaine offenses—Birbal was transferred to the Addison County Jail. Edward Gabaree had been transferred to that facility the day before. Gabaree had recently entered into an agreement with the government to provide "any and all information in his possession relating directly or indirectly to any and all criminal activities or other matters of which he has knowledge," and had been sentenced the previous day on drug-related charges.

On September 19, Gabaree asked Birbal why he was in jail, and engaged Birbal in shop talk, specifically inquiring as to the quantity of cocaine Birbal had flushed down the toilet and the total quantity of drugs Birbal had distributed. *United States v. Birbal,* Opinion and Order, No. 92 CR 98–01, 02 (WKS), at 2, 1996 WL 192924 (1996). Birbal responded that he had destroyed six ounces of cocaine, but then grew suspicious of Gabaree and shut up. *Id.*

Subsequently, during the course of Gabaree's cooperation with respect to his own case, he reported Birbal's statements to a DEA agent, who passed the information along to a Vermont police officer, who then interviewed Gabaree. Both the DEA agent and the officer told Gabaree to ask no more questions, but to listen if Birbal had more to say about his drug activity. Gabaree apparently complied; Birbal confirmed at the suppression hearing that Gabaree asked no further questions during their time in jail. Gabaree learned more about Birbal's drug activity as a result of hearing conversations between Birbal and another inmate, Gary Malley. *Id.* at 2–3.

On October 8 and 15, 1992, Gabaree told the grand jury about Birbal's drug activity.

---

2. The superseding indictment charged both defendants with: 1) conspiring between 1989 and July 20, 1991 to distribute and possess with intent to distribute heroin, cocaine, and marijuana, in violation of 21 U.S.C. § 846; 2) distributing heroin to Buckley on July 20, 1991 (the date of his death), in violation of 21 U.S.C. § 841(a)(1); 3) travelling in interstate commerce between July 18 and 20, 1991, for the purpose of facilitating an unlawful activity (dealing in heroin), in violation of 18 U.S.C. § 1952(a)(3) (the Travel Act);

and 4) between 1989 and 1991, distributing heroin, marijuana, and cocaine to Lawrence Stoddard, in violation of 21 U.S.C. § 841(a)(1). The indictment also charged Birbal with 5) possessing cocaine with intent to distribute in June 1992, in violation of 21 U.S.C. § 841(a)(1); and 6) destroying evidence during the execution of a search warrant to prevent its seizure, in violation of 18 U.S.C. § 2232(a).

Birbal and Wright were acquitted on the Travel Act count.

On October 24, Gabaree was transferred from the Addison County Jail.

At Birbal's October 1992 trial for the cocaine offenses, he moved to suppress Gabaree's testimony on the ground that Gabaree had been a government informant when he questioned Birbal in jail. The district court denied the motion. Thereafter, Gabaree testified at both Birbal's first trial for the heroin offenses and the later consolidated trial. At the consolidated trial, Birbal again moved to suppress Gabaree's testimony. The district court denied the motion, ruling: 1) Gabaree was not a government agent when he questioned Birbal, and 2) Gabaree did not interrogate Birbal after he became a government agent. *United States v. Birbal,* Opinion and Order, No. 92 CR 98–01, 02 (WKS), at 5, 1996 WL 192924 (1996).

The substance of Gabaree's testimony at each trial was as follows. While in jail, Birbal discussed his cocaine career over the prior five years, recounting his drug-related dealings with Wright; Birbal also spoke of a friend of Wright's known as "Pete," who had died the same day that Birbal and Wright had sold him heroin and watched him shoot up. Birbal also related that, days before his arrest on the cocaine charges, he had transported a half-pound of cocaine from New York, sold two ounces of it, and flushed the rest down the toilet when the police broke in.

On cross-examination, Gabaree acknowledged that his motivation in approaching officials was to reduce his own jail time, and that his sentence had in fact been reduced by 36 months for his testimony.

## DISCUSSION

■ We review the district court's conclusions as to constitutional violations *de novo,* and its findings of fact for clear error. *United States v. Thompson,* 35 F.3d 100, 103 (2d Cir.1994).

■ On appeal, Birbal broadly argues, with respect to both the heroin and the cocaine offenses, that Gabaree's testimony was received in violation of Birbal's Fifth Amendment right to remain silent and his Sixth Amendment right to assistance of counsel. We note at the outset that Birbal has no

argument that his Sixth Amendment rights were violated by Gabaree's testimony regarding the *heroin* offenses, because Birbal was first indicted for his involvement in Peter Buckley's death after his contact with Gabaree: "the Sixth Amendment right to counsel does not attach until after the initiation of formal charges." *Moran v. Burbine,* 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986). We therefore only address Birbal's Fifth Amendment challenge to his heroin convictions and his Fifth and Sixth Amendment challenges to his cocaine convictions.

## A. The Sixth Amendment Challenge

■ The Sixth Amendment bars the government from planting an agent to elicit jailhouse admissions from an indicted defendant who has asserted his right to counsel. *See United States v. Henry,* 447 U.S. 264, 270–75, 100 S.Ct. 2183, 2186–89, 65 L.Ed.2d 115 (1980). However, "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." *Kuhlmann v. Wilson,* 477 U.S. 436, 459, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364 (1986) (citing *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985)); *see also United States v. Rosa,* 11 F.3d 315, 329 (2d Cir.1993) ("The Sixth Amendment is not violated by the merely fortuitous receipt of incriminating statements."). A defendant does not make out a constitutional violation "simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police." *Kuhlmann,* 477 U.S. at 459, 106 S.Ct. at 2630. Although "the government [has] an affirmative obligation not to *solicit* incriminating statements from the defendant in the absence of his counsel," *Rosa,* 11 F.3d at 329 (emphasis added), there is no constitutional violation when a government informant merely listens and reports, *Kuhlmann,* 477 U.S. at 459, 106 S.Ct. at 2629–30.

When Gabaree first encountered Birbal, Gabaree had agreed with the government to provide "any and all information in his possession relating directly or indirectly to any

and all criminal activities or other matters of which he has knowledge," but had not been enlisted to seek out and collect information from Birbal or any other jailmate. Gabaree asked Birbal questions about his drug activity, and later sought a benefit by offering Birbal's admissions to the government, but once the government focused on the opportunity, it directed Gabaree to ask nothing further, but to listen passively.

▨ The only question presented by this state of affairs is whether Gabaree—an informant as to an unrelated case—was a government informant before he took Birbal's statements to the police. Because we hold that Gabaree was not such an informant, Birbal's Sixth Amendment rights were not violated by the admission of Gabaree's testimony.

The "primary concern" of the government informant rule is to avoid "secret interrogation by investigatory techniques that are the equivalent of direct police interrogation." *Stano v. Butterworth,* 51 F.3d 942, 977 (11th Cir.1995) *(citing Kuhlmann,* 477 U.S. at 459, 106 S.Ct. at 2630), *cert. denied,* —— U.S. ——, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996). Gabaree's July 1992 agreement with the government did not require him to elicit information from Birbal (or anyone else). There is no evidence that Gabaree was aware of Birbal's existence before September 18. The Sixth Amendment rights of a talkative inmate are not violated when a jailmate acts in an entrepreneurial way to seek information of potential value, without having been deputized by the government to question that defendant. No doubt, Gabaree engaged Birbal in conversation in the hopes that he would get something valuable to take to the police, but Gabaree's agreement did not render him a roving agent. *See generally United States v. York,* 933 F.2d 1343, 1357 (7th Cir.1991) (discussing incentives of prisoners to seek information to better their own lot). As soon as the government became involved, Gabaree stopped asking questions; he simply listened to Birbal's bragging and reported it to the government. As previously noted, there is no constitutional violation in the absence of solicitation. *See Kuhlmann,* 477 U.S. at 459, 106 S.Ct. at 2629–30; *Rosa,* 11 F.3d at 329.

Other circuits agree that an informant becomes a government agent for purposes of *Kuhlmann* only when the informant has been instructed by the police to get information about the particular defendant. *See, e.g., United States v. D.F.,* 63 F.3d 671, 682 n. 16 (7th Cir.1995) (key inquiry is whether "the government directed the interrogator toward the defendant in order to obtain incriminating information"); *Stano,* 51 F.3d at 977 (no evidence to support prearrangement between informant and government regarding defendant); *Robinson v. Clarke,* 939 F.2d 573, 576 (8th Cir.1991) (where government had not asked informant to solicit information while in prison, no Sixth Amendment violation); *United States v. Watson,* 894 F.2d 1345, 1347–48 (D.C.Cir.1990) (government informant was not instructed to obtain information from defendant; entrepreneurial acts did not violate defendant's Sixth Amendment rights); *Brooks v. Kincheloe,* 848 F.2d 940, 945 (9th Cir.1988) (even though informant solicited information from defendant before going to the police, informant had not been asked to obtain information from defendant). *But see United States v. Brink,* 39 F.3d 419, 424 (3d Cir.1994).

## B. The Fifth Amendment Challenge

▨ Even if Gabaree had been a government agent at the time he questioned Birbal, Birbal's Fifth Amendment rights still would not have been violated. *Miranda v. Arizona* and its progeny protect against the admission of incriminating statements made by a suspect during "questioning initiated by law enforcement officers" in a "police-dominated atmosphere." *Miranda,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *Illinois v. Perkins,* 496 U.S. 292, 296, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243 (1990). That coercive atmosphere is lacking when an inmate speaks to someone he considers to be a fellow inmate. For that reason, "[c]onversations between suspects and undercover agents do not implicate the concerns underlying *Miranda.*" *Perkins,* 496 U.S. at 296, 110 S.Ct. at 2397; *see also United States v. Holmes,* 44 F.3d 1150, 1159 (2d Cir.1995); *Alexander v. State of Connecticut,* 917 F.2d 747, 751 (2d Cir.1990).

## CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.