# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

Nos. 02-2382NI, 02-3127NI
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the Northern District |
| | * | Iowa. |
| Angela Jane Johnson, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 13, 2003

Filed: July 31, 2003 **(Corrected 9/25/03)**

_____

Before HANSEN, Chief Judge,[1] RICHARD S. ARNOLD and BYE, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

The United States placed Angela Johnson, the defendant in this case, in a small jail where it was likely that she would encounter an inmate, Robert McNeese, who had acted as an informant for the government in the past. Mr. McNeese was able to elicit damaging information from Ms. Johnson about her involvement in the murder of three government witnesses and one witness's two young daughters. Ms. Johnson

_____

[1]The Hon. David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Hon. James B. Loken.

moved to suppress Mr. McNeese's testimony on the ground that he was a government agent when he talked to her, and that use of the testimony against her would therefore violate her Sixth Amendment right to counsel. The District Court granted her motion, and the government appealed. We hold that the District Court misconstrued our precedent in reaching this conclusion. We reverse the District Court's order suppressing the testimony in question and remand this case for further proceedings consistent with this opinion.

I.

In 1993, a grand jury indicted Dustin Honken for conspiracy to distribute methamphetamine. A witness who was to testify against him disappeared, as did the witness's girlfriend and her two young daughters. Later, another witness in the case vanished. By March of 1995, the government was forced to abandon its case against Mr. Honken because of a dearth of witnesses to testify against him. However, the government continued its investigation. Angela Johnson, Mr. Honken's girlfriend at the time of the disappearances, was indicted in July of 2000 for aiding and abetting the murder of the five witnesses, aiding and abetting the solicitation of the murder of witnesses, and conspiring to interfere with witnesses. 18 U.S.C. §§ 1512, 373, 371.[2] She was arrested on July 30, 2000. The government had Ms. Johnson sent to the Benton County Jail in Iowa.

The government knew that Robert McNeese, an inmate with a history of trading information he gathered in prison for favorable treatment, was already housed at the Benton County Jail. By August 7, 2000, Mr. McNeese had established contact with Ms. Johnson. Thereafter, they communicated openly or surreptitiously as

---

[2]A grand jury returned a second indictment against Ms. Johnson on August 30, 2001. That indictment charged her with five counts of committing murders while engaged in a drug-trafficking conspiracy and five counts of committing murders while engaged in a continuing criminal enterprise. 21 U.S.C. § 848(e).

opportunities presented themselves. It is clear that some of the jailers knew that they were in contact and made only token efforts to sever the link between them. Detective Wright, who was in charge of investigating incidents at the jail, learned of these exchanges and ordered Mr. McNeese to stop communicating with Ms. Johnson. Detective Wright had Ms. Johnson moved to a new cell, but the move merely altered her channels of communication with Mr. McNeese, not the frequency of contacts.

A month later, Mr. McNeese told a prison official that he had convinced Ms. Johnson that he could get a prisoner in another jail to confess to the five murders she was charged with, so that Ms. Johnson could sue the government for false imprisonment and split the proceeds of such a suit with Mr. McNeese. Mr. McNeese had also obtained some incriminating admissions from Ms. Johnson. The official told Mr. McNeese not to deal with Ms. Johnson until the officer could get instructions on how the situation should be handled.

Five days later, on September 11, 2000, Mr. McNeese met with officials to receive "listening-post" instructions regarding Ms. Johnson. All parties agree that Mr. McNeese was acting as a government agent from this point forward. The next day he signed a plea agreement that had been drafted back on September 7, 2000, in another case. This agreement required that Mr. McNeese cooperate in cases that might arise in the Northern District of Iowa. Two weeks later, Mr. McNeese disclosed to the government the information that he had extracted from Ms. Johnson while they had been in jail together.

The government filed a notice of intent to use Ms. Johnson's disclosures to Mr. McNeese and evidence derived therefrom. Ms. Johnson moved to suppress that evidence. She pointed out that she was under indictment (the first of the two indictments involved in this case) at the time of her conversations with Mr. McNeese. Accordingly, her right to counsel under the Sixth Amendment had attached. She asserted, moreover, that Mr. McNeese was a government agent at the time of all of

his conversations with her, and that he had deliberately elicited from her the information that the government sought to introduce. In support of this contention, Ms. Johnson cited Massiah v. United States, 377 U.S. 201 (1964). After an evidentiary hearing the District Court filed an opinion granting Ms. Johnson's motion. United States v. Johnson, 196 F. Supp. 2d 795 (N.D. Iowa 2002). The major issue discussed in the opinion was whether Mr. McNeese was a government agent before September 11, 2000. The District Court held that he was. From the order granting Ms. Johnson's motion to suppress, the United States appeals.

II.

The leading Supreme Court case in the area is, as indicated, Massiah v. United States, supra. The case holds that the Sixth Amendment rights of a defendant were violated "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." 377 U.S. at 206.

We have recently had occasion to apply and explain the doctrine of Massiah. In Moore v. United States, 178 F.3d 994 (8th Cir. 1999), the defendant Moore claimed that his Sixth Amendment right to counsel had been violated by the use against him at trial of statements he had made that were overheard by a fellow inmate, one Joseph Hartwig. Before he overheard the statements in question, Hartwig had signed an agreement with the government to provide a proffer of information concerning his knowledge of drug-related criminal activity. The charges against Moore were not drug-related, but Hartwig thought that he might benefit from providing information about Moore. He did provide this information, and it was used against Moore at his trial. We held that the testimony was properly admitted. Two elements of the Massiah doctrine were in issue: whether Hartwig was a government agent, and whether he deliberately elicited any information from Moore. Our opinion

held against Moore and for the government on both of these points.  As to whether Hartwig was a government agent, we stated:

> "[A]n informant becomes a government agent for purposes of [Massiah] only when the informant has been instructed by the police to get information about the particular defendant."  United States v. Birbal, 113 F.3d 342, 346 (2d Cir. 1997) (collecting cases).  To the extent there was an agreement between Hartwig and the government, there is no evidence to suggest it had anything to do with Moore.  The proffer agreement simply evidenced Hartwig's willingness to disclose his knowledge of drug activity in hopes of receiving a more favorable plea agreement.  Even if we were to accept Hartwig's view that the proffer applied to his knowledge of any illegal activity, there is still no evidence that Hartwig was directed to procure additional information from Moore, or anybody else.

Moore, 178 F.3d at 999.

There is nothing obscure about this language.  Quoting the Second Circuit's opinion in Birbal, we said that an informant becomes a government agent for Massiah purposes only when the informant has been instructed by the police to get information about a particular defendant.  (The same position has now been taken by the First Circuit.  See United States v. LaBare, 191 F.3d 60, 65 (1st Cir. 1999).)  As we noted in Moore, the Birbal opinion, the rule of which we adopted, collected cases on the subject.  Among these cases were some opinions that took what might be called a broader approach, as opposed to the bright-line, specific language of Birbal.  We of course were aware of these cases at the time, but nevertheless adopted the Birbal formulation as the rule of this Circuit.

If the <u>Moore</u> opinion is applied as written, Ms. Johnson's position cannot prevail in the present case. Mr. McNeese was not, at any time before September 11, 2000, instructed, either in express words or by implication, to get information about Ms. Johnson. Mr. McNeese had been helpful to the government in the past. He had proved himself an expert interrogator and informant. We may assume that the government, when Mr. McNeese was placed in the same institution with Ms. Johnson, hoped that Mr. McNeese might come up with something helpful, especially as, at that time, the bodies of the murder victims had not been found. All of these facts, however, when taken together, do not amount to an instruction to Mr. McNeese to get information about Ms. Johnson in particular.

The District Court acknowledged that in " <u>Moore</u> . . . the Eighth Circuit Court of Appeals analyzed the 'agency' element of a '<u>Massiah</u> violation' in such a way as to suggest that there is . . . a 'bright line rule' at least in this circuit . . .." <u>United States v. Johnson</u>, 196 F. Supp. 2d at 847. The District Court continued:

> Thus, in <u>Moore</u>, the Eighth Circuit Court of Appeals appeared to rely on a sort of "bright line rule" for determination of the agency of an informant, based on whether or not " 'the informant has been instructed by the police to get information about the particular defendant.' "
> <u>Id.</u> at 999 (quoting <u>Birbal</u>, 113 F.3d at 346).

196 F. Supp. 2d at 848. The District Court then referred to <u>Birbal</u> as "the decision from which the Eighth Circuit Court of Appeals in <u>Moore</u> extracted what appears to be its 'bright line rule.' " 196 F. Supp. 2d at 848. The District Court continued: "<u>Moore</u> and <u>Birbal</u> seem to recognize a 'bright line rule.' " 196 F. Supp. 2d at 849.

Despite this reading of <u>Moore</u>, with which, incidentally, we agree, the District Court declined to apply the rule of <u>Moore</u> in the present case. Instead, it held that,

-6-

under all of the facts in the record before it, agency for <u>Massiah</u> purposes was established in the absence of express instructions from the government to get information about a particular defendant "by proof of an implicit agreement arising from a longstanding informant's 'roving agency' or 'symbiotic relationship' " with the government. 196 F. Supp. 2d at 857.

The District Court gave two reasons for declining to follow the plain language of <u>Moore</u>. First, the Court observed, and correctly, that the facts in <u>Moore</u> were different. The informant in <u>Moore</u> was not a longstanding cooperator with the government. He had not previously obtained information from a long list of targets of criminal investigations, nor had he previously obtained or been promised benefits in return by government agents. It is certainly true that <u>Moore</u> could have been decided on narrower grounds. We could have pointed out that Hartwig had no extensive history of cooperation with the government in other cases. We did not, however, choose to do so. Instead, we adopted the rule of <u>Birbal</u>, already referred to several times. It will often be possible to reinterpret opinions in past cases and to theorize that they could have been based on narrower grounds. This is not a good enough reason, we think, for disregarding the plain language of such opinions. The <u>Moore</u> Court chose to adopt what the District Court correctly perceived as a bright-line rule. If an informant has not been instructed by the police to get information about the particular defendant, that informant is not a government agent for <u>Massiah</u> purposes. <u>Moore</u> does not say that an informant who has been instructed to get information about a particular defendant is a government agent, but that one may be a government agent in other circumstances, as well. The opinion says that an informant becomes a government agent "<u>only</u> when the informant has been instructed by the police to get information about the particular defendant." <u>Moore</u>, 178 F.3d at 999. We do not think that this language can be explained away. It is binding on the District Court and on this panel.

Second, the District Court believed that the <u>Moore</u> opinion, if read to state a controlling bright-line rule, would be inconsistent with "the Sixth Amendment principles established in the Supreme Court's <u>Massiah</u> line of cases . . .." 196 F. Supp. 2d at 861. We respectfully disagree with this line of reasoning. Cases like <u>United States v. Henry</u>, 447 U.S. 264 (1980), on which the District Court particularly relied, were decided long before <u>Moore</u>. It must be assumed, and it is in fact true, that this Court was well aware of <u>Henry</u> and other authorities in the <u>Massiah</u> line of Supreme Court cases at the time the <u>Moore</u> opinion was written. <u>Moore</u>, in other words, must be taken as this Court's authoritative interpretation of those Supreme Court cases. If <u>Henry</u> had been decided after <u>Moore</u>, a different issue would be presented, but that is not the case here. Neither a district court nor a subsequent panel of this Court is free to disregard a previous opinion of this Court on the theory that that earlier opinion was an incorrect interpretation of Supreme Court authority existing at the time. At the time that <u>Moore</u> was decided, it was already clear that some of our sister circuits were using different approaches to resolve the question of agency in <u>Massiah</u> cases. Those courts, presumably, believed that they were acting consistently with Supreme Court precedent. It will frequently happen that different circuits will interpret a line of Supreme Court cases in somewhat different ways. That is what has occurred here. This Circuit's interpretation is contained in <u>Moore</u>, and we are not free to depart from it.

III.

As we have noted, <u>supra</u> at 2 n.2, Ms. Johnson is also the subject of a second indictment, based on the same murders referred to in the first indictment. After filing its opinion granting Ms. Johnson's motion to suppress with respect to the first indictment, the District Court filed a second opinion, <u>United States v. Johnson</u>, 225 F. Supp. 2d 1022 (N.D. Iowa 2002), holding that the suppression order would apply also to any trial under the second indictment. The Court reached this conclusion on the theory that the second indictment, when closely analyzed, actually charged the

-8-

same offenses as the first one.  The government has also appealed from this holding. In view of our decision that the District Court erred in granting the motion to suppress with respect to the first indictment, we need not separately address any issue of suppression with respect to the second indictment.

IV.

For the reasons given, the order of the District Court, granting Ms. Johnson's motion to suppress evidence, is reversed.  This cause is remanded to the District Court for further proceedings consistent with this opinion.

BYE, Circuit Judge, dissenting.

This court's decision in Moore v. United States, 178 F.3d 994 (8th Cir. 1999), adopting the bright-line rule of United States v. Birbal, 113 F.3d 342, 346 (2d Cir. 1997), is binding on the courts below and on this panel.  There is no doubt or argument about that.  The district court framed its decision as a rejection of Moore and, in the process, drew such to the attention and focus of this panel's majority.

The district court's decision, however, in my view, is not inconsistent with Moore.  Moreover, facts found by the district court but overlooked by the majority support the conclusion McNeese was a government agent when soliciting incriminating statements from Johnson.  Because I suggest the district court was on sound factual and legal ground when it held McNeese was a government agent who deliberately elicited incriminating statements from Johnson in the absence of counsel after her Sixth Amendment rights had attached, I respectfully dissent.

# I

In <u>Massiah v. United States</u>, 377 U.S. 201, 206 (1964), the Supreme Court recognized a defendant is denied basic protections of the Sixth Amendment "when there [is] used against [her] at [her] trial evidence of [her] own incriminating words, which federal agents had deliberately elicited from [her] after [s]he had been indicted and in the absence of counsel." <u>Id.</u> at 206. The right to counsel attaches not only to direct confrontations by known government officers, but also to "indirect and surreptitious interrogations" by covert government agents and informants. <u>United States v. Henry</u>, 447 U.S. 264, 272-73 (1980). The majority tethers its decision to the agency prong, holding McNeese was not a government agent while he solicited incriminating statements from Johnson.

In <u>Moore</u> we held "an informant becomes a government agent for purposes of [<u>Massiah</u>] only when the informant has been *instructed* by the police to get information about the *particular* defendant." 178 F.3d at 999 (quoting <u>Birbal</u>, 113 F.3d at 346) (emphasis added). This asks a couple of questions: was there a government instruction to provide information, and was Moore the subject or target of the instruction? The case does not define "instruction."

The question presented in <u>Moore</u> was whether an informant, by entering into an agreement to cooperate with the government for one purpose, was also a government agent when he obtained information from someone clearly outside the scope of the agreement to cooperate. The informant in that case, Hartwig, indisputably had an agreement with the government, however, "there [was] no evidence to suggest it had anything to do with Moore." <u>Id.</u> Because Moore was not the target or subject of the government instruction to obtain information, Hartwig was merely acting as an "entrepreneur" or "volunteer" when he obtained Moore's incriminating statements. Entrepreneurs and volunteers are not government agents.

United States v. Watson, 894 F.2d 1345, 1347 (D.C. 1990); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

McNeese's history of cooperating with the government does not sufficiently distinguish this case so as to remove it from Moore's reach. I therefore agree with the majority opinion; Moore applies to the decision at hand. Proper application of Moore would read as follows: McNeese's history as a government informant does not make him a government agent with respect to Johnson; there must be governmental instruction to get information about her.

This case, however, involves substantial evidence of instruction to secure information about Johnson which goes beyond McNeese's history as an informant. While Moore directs only government "instruction" creates agency, it offers no guidance on what kind of instruction will suffice, or how much. My view is the principal defect in the majority opinion is it does not apply the "instruction" test announced in Moore or explain its employment where there is evidence of government instruction. The real issue to me, sidestepped by the majority, is what kind of government instruction, and how much of it, makes an informant a government agent for Messiah purposes.

II

The majority's treatment of the facts found by the trial court deserves special mention. "When a district court grants a motion to suppress evidence, we review its findings of fact for clear error, and its conclusions of law de novo." United States v. Guevara-Martinez, 262 F.3d 751, 753 (8th Cir. 2001). In the memorandum and order under review the district court laboriously detailed the evidence taken at the suppression hearing and explained the foundation for its factual findings with admirable care. Without so much as a nod to the proper standard of review, however, the majority ignores many of these well-grounded findings of fact.

Johnson did not land in the same jail as the informant by happenstance, as did the defendants in Moore and Birbal. Instead, the lawyer prosecuting Johnson directed the U.S. Marshal to send her to Benton County jail, the only facility where his superstar informant, a man, would have access to her. The prosecutor did so anticipating the intense publicity surrounding Johnson's arrest for the murders and the still-missing bodies would prompt McNeese to interrogate Johnson. The district court found the prosecutor must have known McNeese was likely to obtain incriminating statements from Johnson.

Anticipating it would be a pivotal fact, the issue of the prosecutor's motivation for sending Johnson to Benton County jail was hotly disputed in the suppression hearing. The government claimed the prosecutor wanted Johnson in Benton County jail for security reasons but the district court rejected that reason as pretextual. The district court explained it disbelieved the government's proffered motivation for two reasons: inconsistencies in the prosecutor's evidence and the testimony of the U.S. Marshal indicating prosecutors rarely direct the placement of prisoners. I see no clear error in the district court's finding the prosecutor was motivated not by security concerns but by an intent to circumvent Johnson's Sixth Amendment right to counsel.

In fact, McNeese correctly interpreted the prosecutor's actions as an instruction to help the government obtain information from Johnson, later saying he believed Johnson was incarcerated with him so he "could work her." And work her, he did. The prosecutor received confirmation his plan had worked no later than August 14, when he received a memorandum from Detective Wright confirming McNeese was interrogating Johnson about the murders. These well-supported facts informed the district court's conclusion McNeese was a government agent, and they should govern ours. The majority, however, fails to mention these facts.

On appeal the government did not assert the district court committed clear error, and the majority found no such error. Nonetheless, the majority carefully selects facts which paint a picture of a prosecutor with good kismet, not one with an unconstitutional plan. By ignoring facts evincing the prosecutor sought to circumvent the Sixth Amendment, the majority made its holding more palatable. But in my view this panel has no more business ignoring findings of fact made by the district court (in the absence of clear error) than the district court had in purporting to repudiate our legal decisions. I therefore disagree with the majority's treatment of the district court's findings of fact.

## III

Onwards, then, to the meatier issue of the day: whether the district court erred in concluding McNeese was a government agent when he interrogated Johnson. Moore tells us McNeese was a government agent only if he was "instructed" by the government to get information about Johnson. The majority recognizes it is possible for the instruction to be by implication. Ante at 6. I agree; it would diminish Messiah, Henry and Maine v. Moulton, 474 U.S. 159 (1985), if we were to limit agency to cases where the government gave the informant direct, explicit oral or written instructions to obtain evidence regarding a defendant.

The acts of the prosecutor, whom McNeese knew well and who obtained a substantial reduction in McNeese's sentence in exchange for other informing activities, spoke volumes to McNeese. The prosecutor had Johnson sent to Benton County jail so McNeese could interrogate her, McNeese correctly interpreted the prosecutor's acts and obtained the information. To quote John Wayne, "What do you want me to do? Draw you a picture? Spell it out?" THE SEARCHERS (Warner Brothers 1956). McNeese didn't need the instructions spelled out; both he and the prosecutor knew the score.

-13-

The government did not obtain Johnson's incriminating statements by luck or happenstance; McNeese was not an independent entrepreneurial jailhouse informant who crossed Johnson's path by chance. Their meeting was purposefully arranged by the prosecutor to "circumvent[] the accused's right to have counsel present in a confrontation between the accused and a state agent." Robinson v. Clarke, 939 F.2d 573, 576 (8th Cir. 1991) (quoting Maine v. Moulton, 474 U.S. at 176).

The district court's conclusion McNeese was a government agent draws considerable support from the decision in Maine v. Moulton, in which the Supreme Court explained:

> The Sixth Amendment . . . guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right. The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation. . . . [K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent.

474 U.S. at 176. The government's instruction to McNeese to obtain incriminating information from Johnson made him a government agent. Because McNeese deliberately elicited the incriminating information it cannot be used to secure her conviction.

-14-

IV

Although the district court was unwise to characterize its decision as departing from <u>Moore</u>, its ruling was nevertheless in line with that decision. There is ample evidentiary support for the conclusion the government instructed McNeese to obtain information from Johnson about the murders. Because I conclude the district court did not err in holding McNeese was a government agent when he interrogated Johnson outside the presence of counsel after her Sixth Amendment rights had attached, I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.