William WATSON, Appellant

v.

UNITED STATES, Appellee.

Nos. 98–CF–1373, 01–CO–519 and 05–CO–1301.

District of Columbia Court of Appeals.

Argued May 8, 2007.

Decided Jan. 24, 2008.

Gregory A. Cotter, for appellant.

Suzanne G. Curt, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, Roy W. McLeese III, Kenneth F. Whitted, and James Sweeney, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, and FARRELL and GLICKMAN, Associate Judges.

PER CURIAM:

In this appeal from the denial of appellant's post-trial motions to vacate his convictions of first-degree murder while armed (premeditated),[1] possession of a firearm during a crime of violence,[2] and

---

1. In violation of D.C.Code §§ 22–2401 & – 3202 (1981) (recodified at §§ 22–2101 & – 4502 (2001)).

2. In violation of D.C.Code § 22–3204(b) (1981) (recodified at D.C.Code § 22–4504(b) (2001)).

carrying a pistol without a license,[3] the appellant, Mr. William Watson, raises two issues: (1) that his confession to a government informant was obtained in violation of his Sixth Amendment right to counsel, and (2) that the government committed a *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), violation when it failed to fully disclose the informant's complete criminal history and cooperation with the government.[4] For the reasons discussed below, we remand for an evidentiary hearing as to the first issue and affirm as to the second issue.

## I.

On October 3, 1995, at about 2:00 a.m., Mr. Tyrus Hunt ("Hunt"), also known as "Mink," was shot and killed in the 1200 block of Howison Place, located in the Southwest quadrant of the District of Columbia. Appellant was charged in an indictment with the first-degree murder while armed (premeditated) of Hunt on August 19, 1997. Among the witnesses testifying on the government's behalf was Mr. Charles Bender ("Bender"). While awaiting transportation from the jail to the courthouses, Bender saw and spoke to appellant, a neighborhood acquaintance. According to Bender, appellant confessed to killing Hunt during this encounter. It is Bender's testimony that is at the heart of this appeal.

## II.

■ In September 1995, Bender was arrested and charged in the Superior Court with first-degree murder, as well as other charges related to the murder. In November 1997, Bender pled guilty in federal

court to a RICO conspiracy pursuant to a plea agreement he entered into with the government. The agreement provided that Bender would cooperate with the government "in whatever form [the United States Attorney's Office] deems appropriate, and in any matter as to which the Government deems his cooperation relevant." Bender was also required to testify completely and truthfully at trials of cases at which the government deemed his testimony relevant. In exchange, the government agreed to bring to the sentencing court's attention the nature and extent of Bender's cooperation and file a motion that would enable Bender to ask the sentencing court for a term less than that provided for under the United States Sentencing Guidelines.

At appellant's trial, Bender testified that while awaiting transport to the United States District Court in March 1998, by happenstance he saw appellant, whom he recognized as a neighborhood acquaintance. Bender testified that he approached appellant and asked, "What's up?," then he asked appellant why he was in jail. Appellant replied, "a body." Bender asked "what body," and appellant responded "that Mink [expletive]." Appellant then told Bender that he knocked the victim out and then shot the victim.

During cross-examination of Bender, appellant's trial counsel elicited testimony regarding Bender's plea agreement and his cooperation with the government. However, Bender also testified that the government did not ask him to elicit any information from the appellant and that when he spoke to appellant it was on his own initiative. Bender's testimony was corroborated by an affidavit of an FBI Special Agent,

---

3. In violation of D.C.Code § 22–3204(a) (1981) (recodified at D.C.Code § 22–4504(a) (2001)).

4. While Watson noted a direct appeal immediately following his conviction, he raised no issues on appeal related to the conduct of trial.

which confirmed that at no time did anyone instruct Bender to elicit information from appellant or anyone else. When defense counsel asked Bender why appellant would be willing to confess to him, Bender replied that appellant did not know "how [Bender] was thinking" and that appellant thought he and Bender were "cool."

Appellant was convicted by a jury of first-degree premeditated murder, possession of a firearm during a crime of violence, and carrying a pistol without a license. Following trial, appellant filed a motion pursuant to D.C.Code § 23–110, asserting that his Sixth Amendment right to counsel had been violated by admission of Bender's testimony. The trial court denied this motion on the grounds that Bender was not a government agent. Appellant filed a notice of appeal from the denial of that motion. Subsequently, Bender testified as part of his plea agreement at what is known as the "K Street Trial" and implicated a number of individuals as being part of a marijuana distribution network. Appellant then filed a motion for reconsideration of his motion to vacate pursuant to § 23–110 based on the newly revealed information in the "K Street Trial," and that motion was also denied.[5] Appellant also appealed from the denial of that motion and his appeals were consolidated for our consideration.

The trial court denied appellant's § 23–110 motion on the grounds that Bender was not acting as a government agent when he deliberately elicited incriminating statements from appellant. Therefore, according to the trial court, appellant's Sixth Amendment right to counsel was not violated and he was not entitled to relief under *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

The government in its appeal brief to this court, however, disclosed for the first time that prior to Bender's conversation with appellant, one of its agents had spoken with Bender about appellant. In that conversation (the government relates) Bender had told the government that he had seen appellant murder an individual named Shawn during the summer of 1995, and that Bender was aware that appellant was currently in jail for killing Hunt. Because the trial court and appellant were not made aware of that conversation, they were at a disadvantage in comprehensively assessing whether appellant's Sixth Amendment rights had been violated. Appellant could not elicit further information about the conversation and the judges did not have an opportunity to consider the significance of the conversation in the larger context of a pattern of debriefings between Bender and government agents between 1995 and 1998. We thus find it necessary to remand to the trial court for exploration of the facts surrounding that conversation and its bearing on the *Massiah* issue.

■ Our decisions have established that the Sixth Amendment is violated when government agents expressly or implicitly use an informant as their agent to take some deliberate action, beyond mere passive listening, to elicit incriminating statements from a person whose right to counsel has attached. *See Hager v. United States*, 856 A.2d 1143, 1151 (D.C.2004); *West v. United States*, 866 A.2d 74, 84 (D.C.2005). In contrast, the Sixth Amendment is not violated where the informant acts to elicit incriminating statements from a represented person on his own initiative, and not in furtherance of an express or implicit agreement with the government.

---

5. At the time the motion for reconsideration was filed, Judge Mize was no longer an active judge of the Superior Court, and his cases were assigned to Judge Keary who denied the motion.

*See Kuhlmann v. Wilson*, 477 U.S. 436, 459, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). We consider the trial court in this case to have applied essentially that test in finding that—although Bender himself deliberately sought information from appellant—the government agents, by their actions, had done nothing designed to make Bender a source of admissions from appellant and thus a "government agent" in his dealings with appellant. At the same time, however, the judges were deprived of potentially significant information bearing on that question. This case, as appellant has forcefully argued on appeal, presents an unusual factual setting of repeated interactions—debriefings—between the government and Bender starting in 1995 and continuing through 1998, in which Bender conveyed incriminating information to agents (and prosecutors) about multiple individuals. Courts have recognized that "agreements" whereby an informant furnishes information to the government in violation of *Massiah* do not "have to be explicit or formal, and are often inferred from evidence that the parties behaved as though there were an agreement between them, following a particular course of conduct over a sustained period of time." *United States v. York*, 933 F.2d 1343, 1357 (7th Cir.1991). Other factors nonetheless may support a finding that the government had no hand in deliberately using a person such as Bender to seek admissions forbidden by *Massiah*.[6] But, in any case, a decision on the matter must be based on all relevant and available information, and the government's candor in now disclosing

to us yet another debriefing in which Bender spoke specifically of appellant convinces us that the decisions denying the § 23–110 motions must be re-examined in light of that conversation, and any further relevant evidence presented by appellant. Thus, we remand for that purpose.

### III.

■■■ Appellant's second argument is that the trial court erred in denying his motion for a new trial, pursuant to D.C.Code § 23–110, because Bender's uncharged criminal acts that the government agreed not to prosecute and the extent of Bender's cooperation with the government, which manifested in Bender's testimony at a later separate trial, constitute *Brady* material, which should have been disclosed before trial. In *Brady, supra*, 373 U.S. at 87, 83 S.Ct. 1194, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To prove that a *Brady* violation has occurred, the appellant must show that: (1) the evidence at issue was favorable, (2) the evidence was willfully or inadvertently suppressed by the government, and (3) prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). "To satisfy the prejudice component, the withheld evidence must be material; that is, there must be a reasonable probability that, had the evidence been

---

**6.** Other courts have considered the following as relevant evidence of the government's intent: whether the government focused the informant's attention on the defendant, *see United States v. LaBare*, 191 F.3d 60, 65 (1st Cir.1999); *United States v. Birbal*, 113 F.3d 342, 346 (2d Cir.1997); *Moore v. United States*, 178 F.3d 994, 999 (8th Cir.1999); the requirements of the agreement, *see Birbal*,

*supra*, 113 F.3d at 346; awareness of a person's propensity to inform and intentionally placing such a person in proximity to the defendant, *see United States v. Brink*, 39 F.3d 419, 424 (3d Cir.1994); and encouragement by the government for the informant to obtain more information, *see United States v. Sampol*, 204 U.S.App.D.C. 349, 636 F.2d 621 (1980).

disclosed to the defense, the result of the proceeding would have been different." *Id.* (internal quotations and citations omitted). "The burden is on the [appellant] to prove materiality—hence prejudice—in the *Brady* sense." *Williams v. United States,* 881 A.2d 557, 562 (D.C.2005) (quoting *Bennett v. United States,* 763 A.2d 1117, 1125 n. 9 (D.C.2000)). This court has held that if the undisclosed information is in the nature of impeachment evidence, the information can be immaterial under *Brady* if it is cumulative and the witness has already been impeached by the same kind of evidence. *Williams, supra,* 881 A.2d at 563. We have held that this court reviews a trial court *Brady* materiality ruling for reasonableness. *Powell v. United States,* 880 A.2d 248, 254–55 (D.C.2005). Although there has been a question raised to whether this court's review should be *de novo, Farley v. United States,* 767 A.2d 225, 233 (D.C.2001) (Ruiz, J., dissenting), we need not decide the issue here because under either standard the appellant cannot demonstrate materiality. *Powell, supra,* 880 A.2d at 255.

In September 1995, Bender was charged in the District of Columbia Superior Court with first-degree murder, kidnaping while armed, armed robbery, assault with intent to rob while armed, assault with intent to kill while armed, and carrying a pistol without a license. The November 3, 1997 plea agreement, which was admitted into evidence without objection, allowed Bender to plead guilty only to a RICO violation in Federal District Court for the District of Columbia, while the government agreed to dismiss the charges in Superior Court. The RICO violation included conspiracy to distribute and possess with intent to distribute over 1000 kilograms of marijuana, felony murder, and assault with intent to rob while armed. The plea agreement also precluded the government from pursuing charges for other illegal conduct it was aware of. The agreement, however, did not detail what conduct the government declined to prosecute. Appellant's trial counsel asked Bender during cross-examination whether Bender had engaged in illegal conduct for which he was not being charged or prosecuted.[7] Bender responded that there is "nothing else, other than what I was charged with." Bender's response was incorrect; as evidence adduced at the § 23–110 hearing revealed, Bender later told the federal court jury of a series of other violent acts he had committed and for which the November 3, 1997 plea agreement arguably spared him prosecution. Nevertheless, appellant's trial counsel cross-examined Bender heavily about his criminal activity of which counsel had knowledge, including the dismissed Superior Court charges carrying weighty potential punishment (as well as his conviction for the RICO conspiracy carrying the severest possible punishment short of the death penalty). All told, Bender's motive to curry favor and escape still further prosecution by incriminating appellant was probed in detail before the jury, and any additional cross-examination about his uncharged criminal acts would have been merely cumulative on that score. Further, the evidence apart from Bender's testimony that appellant murdered Hunt—including eye-witness and motive testimony—was strong. For these reasons, appellant cannot meet the prejudice component of a *Brady* violation. *Id.* For similar reasons,

7. The government raises, but does not press, the issue that it is unclear from the record that appellant's trial counsel was not aware of the additional crimes that the government was not pursuing against Bender pursuant to the plea agreement. Thus, we proceed, assuming that there were at least some crimes that were not disclosed to the appellant before trial.

we conclude that Bender's procurement of three other confessions would have been cumulative because the jury heard evidence that as part of the plea agreement Bender was required to testify in trials as to the other information he had or received. Therefore, because appellant has failed to show a reasonable probability that full disclosure of Bender's criminal history and cooperation with the government would have changed the outcome of the trial, we affirm the trial court's ruling on the *Brady* issue. *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

For the foregoing reasons we

*Remand in part and affirm in part.*